**William E. BROCK, Secretary of Labor, United States Department of Labor**

**v.**

**The CLARIDGE HOTEL AND CASINO.**

Nos. 87–5554, 87–5587.

United States Court of Appeals, Third Circuit.

Argued March 16, 1988.

Decided May 2, 1988.

Rehearing and Rehearing In Banc Denied June 1, 1988.

---

Adin C. Goldberg (argued), Donald G. Davis, Spengler Carlson Gubar Brodsky & Frischling, New York City, Gloria E. Soto, Atlantic City, N.J., for Claridge Hotel & Casino.

Monica Gallagher, Associate Sol. (argued), George R. Salem, Sol. of Labor, Linda Jan S. Pack, for Appellate Litigation, Wendy B. Bader, U.S. Dept. of Labor, Washington, D.C., for the U.S.

Before STAPLETON, MANSMANN and HUNTER, Circuit Judges.

### OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

The district court found that defendant Claridge Hotel and Casino violated the Fair Labor Standards Act (FLSA) by failing to pay overtime to certain casino employees. The district court awarded two years of backpay and imposed no liquidated damages. Claridge claims that these employees fall under the exemption for "executive" employees, 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1, and appeals the finding of a violation. The government appeals the damage award. The district court had jurisdiction under 29 U.S.C. § 217. We have jurisdiction under 28 U.S.C. § 1291.

### I.

Defendant Claridge is a limited partnership which operates a hotel and gambling casino in Atlantic City. In the casino, Claridge employs dealers, who actually operate the games, and several levels of supervisors. A boxperson serves the first level of supervision, observing the operation of a single craps table, at which three dealers work. A floorperson observes a number of gaming tables, providing a second level of supervision over all other games. A pit boss, in turn, supervises the dealers, boxpersons and floorpersons in a specified area of the casino. At issue is the executive status of these three classes of supervisors.

These supervisors were required to report to their stations fifteen minutes before the start of their shifts. On arrival and

departure, boxpersons and floorpersons had to place their identification cards in a computerized time clock, which recorded their work hours. All supervisors had to sign a sheet located at their work stations, giving their times of arrival and departure. If the casino was overstaffed, Claridge used its "early out" procedure, by which employees could choose to leave work early. Those who chose not to leave were, if the casino was still overstaffed, assigned to different tasks. An employee qualified in one or more of these supervisory capacities could and did work in other supervisory capacities or as a dealer.

Each pit boss, floorperson and boxperson executed a written contract containing a "Weekly Salary Guarantee". That guarantee stated:

> In consideration of the fact that you are employed in a supervisory capacity, you will be guaranteed a weekly salary of $250.00 for any week in which you perform any service.
>
> Absence from work due to jury duty, court appearance or military leave will not affect this guarantee.
>
> If your absence is due to an accident or illness, you will be covered under our sick leave and disability plans, and therefore this guarantee does not apply.
>
> During weeks in which no service is performed, or in any given week when some service is performed but absence is voluntary or due to a personal reason, this guarantee does not apply.

Wages over the $250 minimum were paid by the hour, according to the number of hours the supervisor had worked. Similarly, deductions for voluntary absence were made according to the number of work hours the employee missed by leaving early. The supervisors did not receive overtime pay, though they regularly worked more than 40 hours in a week.

The district court found that the guarantee applied only "where an employee is not scheduled for a sufficient number of shifts, or is not permitted by defendant to work a sufficient number of hours, to earn $250.00." The district court found the instances when the guaranteed payment applied "rare." [1] In part, the rarity resulted from the high pay received by the supervisors, so that a supervisor in an average week would earn well over the $250 minimum. In part, the rarity resulted from the exceptions to the guarantee, which included sickness and absence under the "early out" procedure. In 11 or 12 instances, [2] the minimum payment had not been made, but was paid after the labor department began its investigation, after which defendant conducted an audit of its wage practices. By its own terms, defendant had found only 12 instances where the guarantee actually came into play, out of up to 70,000 payments. Few supervisors, and even high-level managers who were former supervisors, understood the operation of the agreement.

The district court also found that defendant was aware that the FLSA applied to its operation, and intended to avoid paying its supervisors overtime. The labor department had held a seminar in 1980 on the applicability of the wage standards, but this particular pay plan was not specifically discussed. Defendant sought no oral or written opinion on the effect of its wage plan from the Secretary of Labor. The Secretary instituted this action in October 1984, seeking to enjoin the casino from paying no overtime to its supervisors, seeking three years backpay, and liquidated damages. The Secretary claimed that defendant Claridge had willfully violated the FLSA. The casino claimed that these employees were exempt from the overtime requirements as executive employees.

The district court concluded that the exemption for executive employees did not apply. It based its decision on its finding that the supervisors are compensated on an

---

1. The labor department found only 305 instances over several years in which employees earned less than $250, out of—according to defendant—60,000 to 70,000 pay transactions.

2. The parties dispute the exact number. Whether the number of undisputed underpayments is eleven or twelve is not material to the decision of this case. For convenience, this opinion will refer to the number as twelve.

hourly, and not a salary basis. The court rejected defendant's contention that wages were calculated according to a daily rate, and found that "with the exception of only 12 instances," pay was calculated according to the number of hours worked. The minimum guaranteed payment the court found "nothing more than an illusion." It based this finding on several factors: the 12 instances of nonpayment, including the lack of "a mechanism to ensure that the guarantee was provided," as well as its conclusion that the "early out" program is "not a voluntary absence, but occasioned by defendant and its lack of sufficient business." The district court concluded that these employees were not paid on a salary basis as that term is defined in 29 C.F.R. 541.118. "Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transform the compensation scheme into a salary-based plan." Because the employees were not paid on a salary basis, they were not executive employees under the Act. 29 C.F.R. 541.1(f). Because no exemption applied, defendant Claridge was liable for overtime pay. 29 U.S.C. § 207(a)(1).

The district court applied a two-year statute of limitations to the claim, rejecting the three-year limit for willful violations. The district court held that, under *Brock v. Richland Shoe Co.*, 799 F.2d 80 (3d Cir. 1986), *cert. granted*, —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987), knowledge or reckless disregard was required to establish willfulness. The district court found that, under this standard, it "cannot conclude that defendant's violation of the FLSA was willful," and limited the Secretary to two years' backpay. The district court did not assess liquidated damages, stating that the court believed defendant's violation "was in good faith and [it] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act."

The district court's opinion was filed September 19, 1986, 664 F.Supp. 899, but an order was postponed pending additional information with which to calculate back pay. On June 9, 1987, the court entered its order and judgment, including an injunction and a two-year backpay award. On August 6, 1987, the Secretary filed a notice of appeal seeking review of the decisions on willfulness and liquidated damages. On August 19, 1987, Claridge filed a notice of appeal, timely pursuant to F.R.A.P. 4(a)(3), seeking review of the injunction.

## II.

The FLSA forbids an employer from employing any worker "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the [worker's] regular rate" for the excess hours. 29 U.S.C. § 207(a)(1). The Act exempts "any employee employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary...." 29 U.S.C. § 213(a)(1). Defendant Claridge claims the district court's injunction is improper because the exemption for executive employees applies to the pit bosses, floorpersons and boxpersons. In the district court, Claridge had the burden of proving the applicability of the exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) ("general rule"). The definition of executive employee found in the regulations includes employees "compensated on a salary basis of not less than $250 per week" engaged primarily in managerial tasks. 29 C.F.R. 541.1(f); 29 C.F.R. 541.119(a).[3]

The regulations define "salary basis" in some detail. Salary must be "a predetermined amount" received in full "for any week in which he performs any work without regard to the number of days or hours worked." 29 C.F.R. 541.118(a). Deductions may not be made "for absences occasioned by the employer or by the operating

---

**3.** This is the "short test"; the "long test," which applies to employees earning at least $155 on salary, imposes additional requirements and is not at issue here.

requirements of the business," such as "when work is not available." *Id.* at (a)(1). Deductions for activities such as jury duty or military leave are also not allowed. *Id.* at (a)(4). Deductions are allowed for absences "for a day or more" either for personal reasons or due to sickness if the deduction follows a disability plan. *Id.* at (a)(2) & (a)(3). Improper deductions do not require a finding of nonsalary status, but this determination "depend[s] on the facts in the particular case." *Id.* at (a)(6).

The regulations also specifically allow for "additional compensation besides the salary...." 29 C.F.R. 541.118(b). The regulation gives three examples of such compensation above salary, the first of a commission based on sales, the second of a bonus based on profits. The third example is, "an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations...." *Id.* Of course, the minimum salary must not be subject to improper deductions. *Id.* Nor can the salary be divided, making part of it subject to improper deductions. "For example, a salary of $200 in each week in which any work is performed, and an additional $50 which is made subject to deductions which are not permitted" is not payment on a salary basis.

Defendant does not challenge the validity of the regulation. The Secretary does not contest that the pit bosses, floorpersons and boxpersons are primarily managers and supervise more than two persons. The parties contest only the "salary basis" requirement. We can review the historical facts only for clear error. Whether the district court properly applied these facts to the regulations is a legal question, over which we have plenary review. *See, Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986).

### III.

From the record, it is plain that the district court's finding that the supervisors' wages were actually calculated on an hourly basis is not clearly erroneous. That fact is supported by the payroll records, which show that a supervisor's wage can be calculated by multiplying an hourly wage by the number of hours worked. The underlying issue in this case is whether an otherwise hourly wage can be transformed into payment on a salary basis within the meaning of the regulations by virtue of the guaranteed minimum weekly payment. We hold that, in these circumstances, it cannot.

Claridge claims that this minimum was a salary under 541.118(b), and that all wages above that level were "additional compensation." The concept is fundamentally incoherent. Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it.[4] With regards to hourly employees, it is the employer who decides the worth of a particular task, when he determines the amount to pay the employee performing it. Paying an employee by the hour affords that employee little of the latitude the salary requirement recognizes. Thus, a basic tension exists between the purpose behind a salary requirement and any form of hourly compensation.

In this case, the conflict is insurmountable. Under defendant's argument, a supervisor paid at (for example) $20 per hour achieves his "salary" after twelve and one-half hours; if that supervisor receives a raise to $25 per hour, he then achieves the same "salary" after ten hours.[5] The better

---

**4.** The concurrence characterizes this court as holding that *only* those employees who determine the number of hours to devote to a particular task can be compensated on a salary basis. We do not so hold. Because such latitude is a primary purpose of the salary requirement, we are cautious about inferring an exemption for a

compensation plan apparently inconsistent with this purpose.

**5.** The confusion of denominating this guarantee a "salary" is also shown in the payments of less than $250 allowed under the terms of the guarantee. The regulations allow deductions from

paid the supervisor, the less protection the "salary" provides. Simply, the guarantee bears no relation to the method of paying the supervisor. As the district court noted, the guarantee at issue here was met generally because the supervisors are well-paid. That many supervisors did not understand the operation of the guarantee further underscores this conclusion. That a minimum payment unrelated to an employee's income is that employee's "salary" stretches the common understanding of the term out of proportion.

Section 541.118(b), which provides for an allowable salary which includes additional non-salary compensation, does not automatically bring Claridge's pay practices within the FLSA exception. Claridge's method of computing "salary" differs significantly from commissions and profit-bonuses, the first two examples provided in the regulation. In both examples, the employee is paid a clear, fixed sum for his work; the additional compensation is truly added on, providing an incentive for the employee to perform better. The "additional" compensation claimed by Claridge, on the other hand, varies with the number of hours worked. If an incentive at all, it does not encourage the supervisor to make better use of his time, but only to work more hours. Such encouragement is inconsistent both with salary payment and executive employment. Where, as here, the employee's usual weekly income far exceeds the "salary" guarantee, the guarantee can have no impact on the employee's performance or his status.[6]

On the other hand, the third example in the regulation specifically allows salary payment based on days or shifts worked, so long as the minimum weekly payment is guaranteed. The only difference between this form of payment and that at issue is the increment of time which forms the basis of the wage—the day or shift versus the hour. The regulation does not expressly include hourly wages, but it also does not say that the examples are exclusive. One court of appeals has flatly stated that a distinction is irrational, finding "[a]ny formula which results in such a guarantee is sufficient." *McReynolds v. Pocahontas Corp.*, 192 F.2d 301, 303 (4th Cir.1951). Yet, the requirement is founded not on logical necessity, but on empirical study. "Compensation on a salary basis appears to have been almost universally recognized as the only method of payment consistent with the status implied by the term 'bona fide' executive." Department of Labor, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at p. 24 (1949). Defendant has not argued that the agency can make no distinction between shift and hourly payment. We decline to hold on the record before us that shift compensation provides an employee no more latitude than hourly compensation. Thus, none of the three examples in the regulations reach hourly compensation plans.

The Secretary claims that the deductions made for "early out" absences of less than one day improperly divide the salary, demonstrating that no salary basis exists. The regulations provide an example of such an improper division, $200 per week guaranteed with $50 subject to deductions. § 541.118(b). Claridge claims that the example refers only to a situation where the employer makes payments below the $250 applicable minimum, leaving their guarantee proper. The Secretary claims that the example refers as well to the $155 minimum weekly wage under the "long test", and that the amount of the guarantee is unimportant, only its division. Both arguments have merit. As the Secretary argues, the subsection as a whole applies to both the "long" and the "short" tests. On

---

salary if, for example, an employee is absent at least a full day. *e.g.,* 29 C.F.R. § 541.118(a)(2). Under these circumstances, Claridge did not made *deductions* but held the guarantee *inoperative,* and paid the employees according to the number of hours they worked. Nothing in the regulations allows a salary simply to be avoided. Thus, even the instances where defendant claims it made allowable "deductions" argue that the guarantee was no salary.

**6.** We do not reach the issue, argued by the Secretary, whether a guarantee reasonably related to weekly income can be a "salary" within the meaning of the regulations.

the other hand, the $250 total does not seem mere coincidence. We are persuaded that the Secretary's interpretation is the correct one, analyzing the problem in the context of commissions. If an employer guaranteed an employee a weekly wage, then made deductions from an employee's "commission" because the employee missed half a day's work, we would have little trouble concluding the deduction improper. The result would not change even though that employee's total weekly wage exceeded the guarantee. Yet, the result Claridge achieves with its deductions for "early out" absences is no different. Again, the basic problem with Claridge's approach is the incoherence of attempting to use a weekly guarantee as a "salary."

The Wage–Hour Administrator has issued a few rulings allowing guarantees very similar to that of defendant to operate as salaries. See Opinion Letter No. 396, *reprinted in*, Administrative Opinions (CCH) § 30,996.23 (Sept. 23, 1965) (guarantee equal to "at most one or two day's pay"); Opinion Letter (March 27, 1985); *see also, Nairne v. Manzo*, Slip Op. No. 86–0206 (E.D.Pa. Nov. 14, 1986) [available on WESTLAW 1986 WL 12934] (approving the method of calculating salary, but finding it inapplicable on the facts).[7] These rulings are too infrequent to bind the Secretary in any meaningful way. Claridge does not argue that it has relied on these rulings, as official statements of policy, to its detriment. At best, these rulings argue that the regulation at issue is unclear.

This court has refused to adopt the Secretary's interpretation of an unclear exemption regulation. In *Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246 (3d Cir.1980), the Secretary argued that an employee's "primary duty" for the purposes of the executive exemption must be measured week by week. This court found that "the regulations themselves provide no basis for measurement of primary duty in any specific time frame." *Id.* at 1252. The court felt that imposing a workweek standard was akin to agency rulemaking, improperly attempted in a federal district court. *Id.* at 1253–54. The case is not applicable. The court indicated that, in the absence of the Secretary's argument, it would not have imposed a workweek standard. The Secretary sought, in effect, to add a requirement for exemption. Here, the regulation is, at worst, ambiguous. The Secretary has interpreted the existing regulation, and clearly it has the right to do so. Also, to the extent that no rule pertains to hourly compensation, the burden of ambiguity falls on Claridge. The FLSA imposes liability unless the employer qualifies for exemption. Claridge is the party seeking an addition to the regulations—an allowance for certain hourly compensation plans.[8]

■ Claridge's interpretation of the term "salary basis" contravenes the common meaning of the term. It also contravenes the purpose behind a salary requirement for the executive employment exemption, and the Labor Department's empirical findings on the attributes of bona fide executive status. It is unsupported by the regulations and conflicts with the Secretary's interpretation of those regulations. Claridge did not pay its supervisors on a salary basis. Therefore, those supervisors were not bona fide executives entitled to exemption from the overtime provisions of the FLSA. Therefore, Claridge violated the

---

7. The 1985 opinion letter was withdrawn January 22, 1988. The withdrawal has no bearing on the argument.

8. Claridge also seeks support in various cases, none of which provide it much help. In two recent cases involving managerial employees at a fast-food chain, the only issue on appeal was the primary duties of the employees. *See, Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir.1982); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982). The opinions contain no reference to the method of paying the employees. In other cases, the courts did not consider directly the relationship between a minimum guarantee and an hourly wage, as these facts related to an exemption provided in 29 U.S.C. § 207(e). *See e.g., Hodgson v. Cactus Craft of Arizona*, 481 F.2d 464, 466 (9th Cir. 1973) (court found no guaranteed minimum salary but only hourly wage); *Craig v. Far West Engineering Co.*, 265 F.2d 251, 257–58 (9th Cir.) (considering guarantee under § 207(e)), *cert. denied*, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959).

Act when it did not pay the supervisors overtime.

### IV.

■ An employer who violates the provisions of the FLSA "shall be liable" for liquidated damages. 29 U.S.C. § 216(b). The employer can escape this liability if it shows its actions were "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA, and the district court finds liquidated damages unwarranted. 29 U.S.C. § 260. The employer has a real burden of proof on this issue: unless both predicate facts are shown by the employer, the district court is without discretion to avoid imposing liquidated damages. *Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 129 (3rd Civ.1984). Good faith is a "subjective requirement, shown if the employer had 'an honest intention to ascertain and follow the dictates of the Act.'" *Id.* (quoting *Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982)). The reasonableness test is an objective one, which "[i]gnorance alone" will not satisfy. *Id.* (quoting *Brunner,* 668 F.2d at 753).

■ The district court found that the employer had made a sufficient showing, simply quoting the provisions of the Act. Our case law makes clear that specific findings are required. *Williams,* 747 F.2d at 129; *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1149–50 (3d Cir.1983); *Brunner,* 668 F.2d at 753. The ambiguity of the regulation, the government's inconsistency on the legitimacy of minimum guarantees, and the closeness of the question all argue that Claridge had a reasonable basis for presuming its pay plan complied with the provisions of the FLSA. However, the opinion and the record do not fully address the question of whether Claridge had a reasonable basis for believing the guarantee ever existed. The district court found the minimum guarantee "nothing more than an illusion." The court also stated that "[a]lthough defendant maintains that it consistently adhered to the $250.00 guarantee, we observe that most of its supervisory employees earned more

than that amount merely because they were highly paid hourly employees." However, we are uncertain whether the court meant that the guarantee was never paid, or that—as this court agrees—its status as a salary was illusory.

Claridge argues that, of the 305 instances found by the Labor Department of payments below $250, some were the result of absences of a day or more, so that deductions below the minimum were valid. Others were actually above the minimum, since the Secretary had not considered additional weekly payments for work as a dealer, which gave combined earnings in excess of $250. Excluding these underpayments, only 12 were the result of invalid deductions for absences of less than one day (which the casino has since remedied). It argues that, because these instances are "statistically insignificant," they are inadvertent and cannot alone demonstrate the lack of a guarantee. This argument must fail. Claridge introduced no evidence that it ever made a payment to conform to the guarantee. On this record, the only times the guarantee came into play, Claridge failed to apply it. The employee's general lack of understanding of the guarantee helps confirm this inference. Thus, a finding that Claridge never intended the guarantee to operate, or at least was negligent in assuring its operation, is not clearly erroneous. Either finding would show that Claridge did not have a reasonable basis for believing itself in compliance with the FLSA, requiring the imposition of liquidated damages.

On the other hand, the district court's opinion does not require the imposition of liquidated damages. Each employee signed, and thus presumptively saw, the guarantee agreement. Claridge could expect that its employees would receive at least that minimum per week because of their high wages. Specific enforcement was presumably left to managers, and the record shows no basis on which Claridge should have known the managers were not performing as required. The record shows no instance of an employee complaining about underpayment. (Though this might

be a result of their confusion about the guarantee, nothing in the record requires this court to infer that Claridge was aware of any confusion.) Thus, the record would support a finding that Claridge reasonably believed the guarantee in full operation.

The district court did not state the basis on which Claridge believed itself in compliance with the provisions of the FLSA. Specifically, the opinion does not clearly state whether Claridge could reasonably believe the guarantee in actual operation. The record contains sufficient evidence on both sides of the question to preclude this court from entering such a finding of fact. Also, such a factual finding is best left to the district court, and its fully demonstrated familiarity with both the problem and the parties. Without such a finding, this court cannot review the reasonableness of the employer's belief. We therefore must remand to the district court for a clarification of its opinion.

## V.

An employer is liable for three years of back wages if his violation of the FLSA was willful, but only two if it was not. 29 U.S.C. § 255(a). We have held that willfulness requires a showing of intent or reckless disregard of the Act, not simply knowledge that the Act was "in the picture." *Brock v. Richland Shoe Co.*, 799 F.2d 80, 81 (3d Cir.1986), *cert. granted*, —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987). The district court found that Claridge did intend to pay its employees "straight time" for overtime work, but stated that it could not find Claridge's actions willful.

■ The parties disagree over the standard of our review. Claridge claims this is a question of fact reviewable only for clear error under Fed.R.Civ.P. 52(a); the Secretary claims it is a question of "ultimate fact." given plenary review. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1982). Review depends on the question reviewed. Whether Clar-

idge knew it was violating the Act, whether it intended to violate the Act, is obviously a question of fact. Whether its actions, as found by the trial court and reviewed only for clear error, show a reckless disregard of the law is a legal question, over which we exercise plenary review. This is what the court seemed to do in *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 658 (3d Cir. 1986) (reviewing willfulness under the ADEA), *cert. denied*, —— U.S. ——, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987) (U.S. app. pending).

■ The Secretary seeks to infer knowledge or recklessness from several defendant's acts. First, it claims that Claridge's attendance at the seminar put it on notice that the regulations applied. This argument seeks to reinstate the standard for willfulness rejected in *Richland Shoe.* The Secretary also relies on the court's finding that defendant intended to avoid paying its hourly employees overtime. The Secretary seeks to make this finding out to be more sinister than is warranted. A person may attempt to avoid the provisions of a statute without intent to violate it. For example, we do not hold a plan to avoid paying more taxes "willful" merely because the plan fails. Instead, the question is whether, in fashioning the plan, defendant knew it was in violation of the law, or showed reckless disregard of its provisions. The regulations do not address this case so clearly that recklessness can be inferred from their terms, as the government's inconsistency on the issue shows. The Secretary argues that Claridge's failure to seek agency approval of its plan shows willfulness. However, a failure to obtain administrative sanctions can hardly require a finding of willfulness. Even had the Secretary expressly disapproved this plan, we cannot say that Claridge's violation would have been willful, given the closeness of the question.[9]

The terms of the minimum weekly guarantee do not themselves require a finding

---

9. The Secretary also relies on the fact that the casino did not change its pay practices even after the Secretary declared them improper. Yet, private parties must retain a right to dis-

agree with the Secretary's interpretation of the regulations, especially here where the question is a close one. Such disagreement is not willfulness.

that Claridge willfully violated the provisions of the FLSA. The violation would be willful, on the other hand, if that guarantee was never in effect. The regulations clearly require a $250 minimum guarantee. The district court's opinion is unclear as to whether the guarantee was enforced. If the district court finds that Claridge intended never to enforce the agreement, or that its enforcement procedures amounted to reckless disregard of the terms of the agreement, then the court must find that Claridge willfully violated the Act. On the other hand, if the court finds that Claridge did believe the agreement was in force, even if it was negligent in its enforcement, a conclusion that Claridge did not act willfully is not clearly erroneous.

### VI.

In sum, this court agrees with the district court on the merits of the action. Claridge's weekly guarantee cannot, without more, transform an hourly compensation scheme into a salary basis of payment. Therefore, Claridge violated the provisions of the FLSA by withholding overtime payments to its boxpersons, floorpersons and pit bosses. On the other hand, this court is uncertain on what basis the district court found that Claridge had a reasonable basis for believing itself in compliance, and that the violation was not willful. We therefore will remand to the district for a clarification of its specific factual findings.

STAPLETON, Circuit Judge, Concurring:

I reach the same conclusion as my colleagues; the case must be remanded for further proceedings. I am in fundamental disagreement with them, however, on the issue for resolution on remand. Accordingly, I write separately.

The undisputed record evidence in this case indicates (1) that each pit boss, floorperson and boxperson had a legally enforceable agreement entitling him or her to a weekly compensation calculated by reference to the number of hours worked with a minimum guarantee of $250, and (2) that in the course of compensating employees in these categories for between 60,000 and 70,000 work weeks during the audit period, Claridge failed to pay in accordance with this agreement on only twelve occasions. This undisputed evidence establishes that Claridge purported to have a compensation plan under which these employees were to be paid "on a salary basis" as defined in the Secretary's regulations and at least suggests that, with very few exceptions, Claridge's compensation scheme operated in practice in accordance with this compensation plan. The court is able to conclude that Claridge did not pay the employees "on a salary basis" only by endorsing a concept of "salary" which is in conflict not only with the position taken by the Secretary in her regulations but also with the position taken by the Secretary in this appeal.

As the court correctly notes, if pit bosses, floorpersons and boxpersons engage primarily in managerial tasks, as they concededly do, and are "compensated on a salary basis at a rate of not less than $250 per week," Claridge has no obligation under the regulations to pay overtime for hours worked in excess of forty. The concept of "on a salary basis" is described in some detail in § 541.118 of the regulations which provides in relevant part as follows:

§ 541.118 Salary Basis.

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, *a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability....

(4) Deductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave....

\*　　\*　　\*　　\*　　\*　　\*

(b) *Minimum guarantee plus extras. It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.* The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. *Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work.* Such arrangements are subject to the exceptions in paragraph (a) of this section.... (emphasis supplied).

For me, the underlined portions of this regulation communicate in unmistakable terms that an employer is compensating its employees "on a salary basis" when its compensation plan calls for payment for managerial services in accordance with a formula based on the "quantity of work performed" so long as there is a minimum guarantee of $250 per week unreduced by deductions other than those expressly authorized in the regulation.

The court suggests that an employee cannot be compensated "on a salary basis" unless he or she "decide[s] for himself [or herself] the number of hours to devote to a particular task," Typescript at 184, and presumably unless those decisions have no bearing on the amount of compensation he or she receives. The court therefore holds that an employee whose pay is determined on an hourly basis with a minimum guarantee cannot qualify under the regulations as written. This holding is inconsistent (1) with the clear implication of § 541.118 that compensation above the $250 floor can be based on the quantity of work performed, (2) with the regulation's example of a permissible compensation plan based on days or shifts worked, and (3) with the Secretary's position before us and in the prior rulings referred to by the court.

While the Secretary's investigation of Claridge's pay practices appears to have been conducted with a view more in line with that adopted by the court, she has acknowledged before us that a compensation plan calling for a $250 floor and additional compensation based on the number of hours worked can qualify under § 541.118. The Secretary does go further, however. She maintains that, despite the fact that payment on an hourly basis can

sometimes qualify, Claridge's plan does not. She advances two arguments in support of this position. First, the Secretary insists that the regulation applies to plans such as Claridge's only when " 'there is a reasonable relationship between the hourly rate, the regular or normal working hours and the amount of the weekly guarantee' " so that the weekly guarantee is " 'roughly equivalent to the employee's earnings at the assigned hourly rate for his normal ... [work week].' " Secretary's Brief in Response to the Amici Curiae at 9, quoting II Wage and Hour Division Field Operations Handbook § 22b03. The Secretary notes that this "reasonable relationship" test is set forth in a five volume "Wage and Hour Division Field Operations Handbook" that "provides instructions for Wage and Hour enforcement." *Id.* at 9 n. 2.

I would decline to accept the Secretary's contention. The Act itself creates the "executive capacity" exemption that Claridge here claims, and the Act expressly provides that this exemption shall have the scope "defined and delimited from time to time by the regulations of the Secretary ...". 29 U.S.C. § 213(a)(1). Nothing resembling a "reasonable relationship" requirement can be found in the Secretary's regulations and I would hold that inserting one involves more than "interpretation", as claimed by the Secretary. Unlike the court, I find *Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246 (3d Cir.1980) precisely on point and would decline to defer to the Secretary's attempt to impose a requirement found only in her instructions to her enforcement personnel.

The second arrow to the Secretary's bow is her contention that the final paragraph of the written "Weekly Salary Guarantee" renders the defendant's compensation plan nonconforming. The Secretary here points to language providing that the $250 minimum will not be applicable when "some service is performed [in a given week] but absence is voluntary or due to a personal reason." In another context, I would acknowledge that this language could reasonably be interpreted as impermissibly broad, i.e., as applying not only to days of voluntary absence but also to voluntary absences of less than a day. However, in a context involving a contract that tracks the provisions of the applicable regulation, I am disinclined to resolve the ambiguity against the employer. I would refuse to do so in the absence of persuasive evidence that the parties gave their agreement such a broad interpretation in practice.

The Secretary insists that even if Claridge's compensation plan on its face compensates "on a salary basis," it was not carried out in practice. The Secretary's evidence at trial failed to support this position, however. The Secretary's investigator, Patrick Reilly, was able to testify only that there were 305 instances between July of 1981 and January of 1983 in which Claridge paid an employee less than $250 for a week in which he or she worked. This testimony is of little probative value because the regulation and the agreement between the defendant and its employees permit payment of less than $250 in a number of circumstances and Mr. Reilly was unable to testify about the circumstances surrounding these transactions. Claridge, on the other hand, came forward with affirmative evidence that the defendant complied with the terms of the regulation and its employment agreements in all of the 60,000 to 70,000 transactions during the audit period except twelve transactions affecting eleven employees. Claridge's payroll supervisor testified that she conducted an audit of all "under $250 weekly payment" and "less than 8 hour absence" situations during the audit and found only this limited number of offending transactions. She further testified that supplemental payments were promptly made to the eleven employees affected.

While it is clear that the district court concluded that pit bosses, floorpersons and boxpersons were not compensated by defendant on a salary basis, the underpinnings of that conclusion are not clear. As I read its opinion, the district court appears to have regarded Claridge's compensation plan as a noncomplying hourly wage plan based primarily on the fact that, given the relatively high level at which these employees were compensated, the weekly salary

guarantee rarely came into play. While the court does not refer to the Secretary's Handbook, such a conclusion reflects an acceptance of her "reasonable relationship" requirement. As previously indicated I would hold that this was error.

This does not mean, however, that the frequency or infrequency of occasions calling for payment of the $250 per week minimum salary is not relevant to a proper analysis of this case. As the district court noted there are admittedly twelve instances during the audit period in which Claridge deducted for voluntary partial day absences and thus paid less than $250 for a week in which services were performed. The key issue is the inference to be drawn from this fact. That issue is framed by § 541.118(a)(6) of the regulations which provides as follows:

(6) The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

As this provision suggests, resolution of the crucial issue of whether the twelve errors were attributable to inadvertence or to an intention not to pay the employee "on a salary basis" depends in large part on how many instances there were in which the $250 minimum guarantee came into play or would have come into play but for the impermissible deductions. If because of the relatively high level of compensation received by these employees, the twelve impermissibly low payments constitute a substantial percentage of the instances when the $250 minimum guarantee was implicated, an inference of an intentional failure to pay "on a salary basis" would be appropriate. On the other hand, if as suggested by the 305 instances of payments below $250, the number of instances in which the minimum guarantee was implicated was large in relation to the twelve underpayments, inadvertence would be the more appropriate inference and an inference of intentional noncompliance might well be clearly erroneous.

The district court's refusal to find that Claridge had "willfully" violated the FLSA and its finding that Claridge acted "in good faith" suggests that it did not view the twelve impermissible underpayments as intentional refusals to pay "on a salary basis." I agree with the court, however, that the district court's comments on these matters are too cryptic to permit us to be confident about what its views were.

Based on the foregoing anaysis, I would remand to the district court with instructions that it apply § 541.118(a)(6) to the record in this case and determine whether the twelve impermissible underpayments were attributable to inadvertence, to an intentional refusal to pay "on a salary basis," or to a reckless indifference as to whether these employees were paid "on a salary basis." [1] If the district court found only inadvertence, the defendant would be entitled to the benefit of the "executive capacity" exemption and, therefore, to a judgment in its favor.

1. I agree with the court that Claridge has the burden of showing its entitlement to the "executive capacity" exemption. Whether or not defendant has presented a *prima facie* case of entitlement would depend on an analysis of record that is best undertaken initially on the district court level.