Anne Marie HOOD, et al., Plaintiffs,

v.

MERCY HEALTHCARE ARIZONA
(d/b/a, St. Joseph's Hospital &
Medical Center), Defendant.

No. CIV. 95–2631–PHX–SMM.

United States District Court,
D. Arizona.

Sept. 30, 1997.

Stanley Lubin, Law Offices of Stanley Lubin PC, Phoenix, AZ, for Ann Marie Hood, Jennifer Sacher, Linda Neal, Valerie R. Smitherman, Liberty Nunoz, Cynthia Walker, Paul Elsbury, Kimberley McClure, Karen Reiman, Ann Kamel, Rhonda Flaherty.

Robert J. Denny, William Porter Allen, Snell & Wilmer LLP, Phoenix, AZ, for Mercy Healthcare Arizona.

## ORDER

McNAMEE, District Judge.

## I. INTRODUCTION

On November 29, 1995, two nurses employed in the Intensive Care Unit (ICU) at St. Joseph's Hospital filed this action on behalf of themselves and all others similarly situated under the Fair Labor and Standards Act of 1938 (FLSA), § 13(a)(1), as amended, 29 U.S.C.A. § 213(a)(1). Eleven other ICU nurses exercised the option to join as Plaintiffs pursuant to 29 U.S.C. § 216(b). Plaintiffs allege that their employer, Mercy Healthcare Arizona ("St. Joseph's Hospital") unlawfully denied them overtime pay in violation of the statute. Currently pending and considered herein are the parties cross-motions for summary judgment.

## II. BACKGROUND

The Fair Labor and Standards Act of 1938 (FLSA), § 13(a)(1), as amended, 29 U.S.C.A. § 213(a)(1), requires that employers pay employees one and one half times their regular hourly rate of pay for hours worked in one week in excess of 40. 29 U.S.C. § 207.

Bona fide executive, administrative and professional employees, however, are exempt from overtime pay. 29 U.S.C. § 213(a)(1).

Defendant Mercy Healthcare Arizona d/b/a St. Joseph's Hospital & Medical Center is a non-profit corporation the delivers healthcare services to the Phoenix Community including the operation of a 531 bed hospital. DSOF, ¶ 1. Defendant is an employer as defined under the FLSA, 29 U.S.C. § 203(d). PSOF, ¶ 1; DRPSOF, ¶ 1. Plaintiffs are all registered nurses employed in the Intensive Care Unit (ICU) of Defendant's hospital, and "employees" as also defined under the FLSA, 29 U.S.C. § 203(e)(1). PSOF, ¶¶ 3–4; DRPSOF, ¶ 1.

During all times relevant to this action, Plaintiffs were paid in accordance with one of two versions of "St. Joseph's Hospital & Medical Center Deviated Work Schedule Agreement." PSOF, ¶ 5; DSOF, ¶ 5; see PSOF 1 & 2.[1] Under the work schedule agreements, Plaintiffs were classified as "exempt" employees not eligible for over-time pay under the FLSA. The agreements provided a guaranteed gross salary of either $340.00 or $698.88 per pay period of two weeks. See DSOF ¶ 5, and Exhs. A at ¶ 3, A–1 at ¶¶ 1–2, C at ¶ 4. In addition, Plaintiffs were to be paid one and one half their designated hourly rate for all hours worked in excess of 12 in one day, and 84 in two weeks. Id., Exh. A at ¶¶ 5–6 & A–1 ¶ 3. Plaintiffs were also required to punch time clocks at the beginning and end of every shift. Id., Exh. A–1 at ¶ 4. In addition, the agreement provided for certain paid time off benefits including vacation, extended illness, jury duty, holidays, funeral leave, conferences, and breaks. Id.

From time to time, the patient consensus at the ICU did not support the number of nurses scheduled to work. PSOF at ¶ 10, and Attachs. 7–9 at ¶ 6; DRPSOF at ¶ 1. On those occasions, Defendant would contact the "unneeded" nurses and inform them not to come to work. Id. Plaintiffs were required

---

1. The two versions differ in that one was in place on or before August of 1984, and was amended by the second one in 1988. The amended version provided a higher rate of pay, but otherwise was substantially similar to the first. Cf. PSOF, Exhs. 1 & 2. Only Plaintiffs Brown, Elsbury,

McClure and Reiman worked under the 1984 pay agreement. See DSOF ¶ 5 & Exh. A–1. The remaining Plaintiffs—Flaherty, Hood, Kamel, Munoz, Neal, Sacher, Shannon, Smitherman, Walker—were subject to the 1988 agreement. Id.

to use paid time off benefits accrued on those occasions or receive no pay at all for the cancelled shifts. *Id.*

Plaintiffs' weekly rate of pay was actually determined by the number of hours worked multiplied by an hourly rate. PSOF ¶ 6; DRPSOF ¶ 1; DSOF, ¶ 7. The total compensation each pay period was calculated based on a straight time pay, overtime pay for all hours worked in excess of 12 per day and 84 per pay period and could also include pay for vacation, sick leave, holiday pay, extended leave pay and shift differentials, and other paid leave such as funeral or jury duty benefits. DSOF at ¶ 7; Exh. A at ¶ 6. The total compensation fluctuated each pay period depending upon hours worked, overtime pay earned and paid time off benefits utilized. *Id.*

Certain allowances for pay reduction were provided for under the deviated work schedule and other hospital policies. Specifically, under the holiday pay policy, Plaintiffs' would be subject to loss of hours worked during a pay period if they elected not to make up to eighty-four for hours taken off over eight per holiday. PSOF ¶ 12; Exhs. 1, 2. Further, pursuant to the Hospital's Performance Improvement Policy, an employee could be suspended without pay as a form of discipline, subject to the Director of Human Resources or designee. PSOF ¶ 11; Exh. 6. However, since March 5, 1997, the Hospitals Director of Human Resource had approved no unpaid suspension of an exempt employee, nor "would [she] approve such an unpaid suspension for any other reason than provided for by the FLSA, e.g. violations of safety rules of major significance or for a full work week." DSOF, Exh. A at ¶ 7.

### III. STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are

material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The dispute must also be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *see also Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 317, 106 S.Ct. 2548. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

### IV. DISCUSSION

Plaintiffs move for summary judgment declaring that they were improperly classified as exempt professional employees, and were unlawfully denied overtime pay in violation of the FLSA. Under the FLSA, Defendant has the burden of proving that Plaintiffs "plainly" and "unmistakenly" fall within the terms of an exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 197–97, 94 S.Ct. 2223, 2228–29 (1974); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Abshire v. County of Kern,* 908 F.2d 483, 485–86 (9th Cir.1990).

The regulations define a professional employee as one who is compensated on a salary basis, at a rate of at least $170 per week, and whose primary duties consist of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized instruction and study. 29 C.F.R. §§ 541.3(a)(1) and 541.311. Thus, under the Secretary's promulgating regulations, Defendant generally must meet two tests: (1) the 'salary basis test', and (2) the 'duties test.' *See Auer v. Robbins*, 117 S.Ct. at 908; *Abshire v. County of Kern*, 908 F.2d 483, 484 (9th Cir.1990); 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e) (1996). Although the parties dispute that the Plaintiffs in this action meet the "duties test", the only issue presented in this motion is whether Plaintiffs were paid on a salary-basis.

Plaintiffs argue multiple bases for Defendant's inability to characterize Plaintiffs as paid on a salary basis. Most generally, Plaintiffs argue that they were clearly not paid a predetermined salary, but an hourly rate based upon the fact that their pay for each pay period was determined by their hourly rate multiplied by the number of hours worked each week. In addition, Plaintiffs argue that the overtime policy, time cards, work breaks, and pay sheets were all premised on an hourly basis. Finally, Plaintiffs argue that their pay is or was subjected to improper deductions for absences of less than a day in relation to the holiday leave policy and when no work was available.[2]

## A. Minimum Salary Guarantee

Defendant does not genuinely dispute that Plaintiffs' pay was determined on an hourly basis. Defendant in fact stipulates that Plaintiffs' weekly rate of pay was actually determined by the number of hours worked multiplied by an hourly rate. PSOF ¶ 6; DRPSOF ¶ 1; DSOF, ¶ 7. Defendant's principal argument in opposition to Plaintiffs' motion and in support of its cross-motion, is that Plaintiffs were nonetheless guaranteed a particular amount of pay for each pay period, and that the Plaintiffs' actual rate of pay never fell below the guaranteed rate of pay after taking into account the hourly rate multiplied by the hours worked, plus any paid time off benefits used. Further, under the regulations, a pay scheme comprising of a guaranteed rate in addition to pay determined on an hourly scale is entirely consistent with a 'salary basis' of pay. *See* 29 C.F.R. § 541.118(b).[3]

Plaintiffs do not dispute that a pay plan guaranteeing a certain weekly amount but ultimately based on an hourly rate is not per se inconsistent with the 'salary-basis' requirement. However, Plaintiffs argue, that the guaranteed salary must bear a reasonable relationship to what the Plaintiff actually regularly receives based on the hourly rate. *See* Opinion WH–528, January 22, 1988 (*citing* § 22b03 of the Wage and Hour Field Operations Handbook); *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 184 (3rd. Cir.1988) (finding supervisor's not on salary where guarantee bore no reasonable relationship to method of payment). In other words, the guarantee may not be some arbitrary amount unreasonably below the intended rate of pay set simply to avoid overtime payments of the FLSA.

Section 541.118 of the Code of Federal Regulations·promulgated by the Secretary of Labor provides:

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in

---

**2.** Plaintiffs' original moving papers also raised the argument that the Hospital's disciplinary system subjected Plaintiffs to improper deductions in the form of suspension without pay for violations other than major safety infractions. During oral argument on September 22, 1997, however, Plaintiffs withdrew the argument in view of *Childers v. City of Eugene*, 120 F.3d 944 (9th Cir.1997), and *Stanley v. City of Tracy*, 120 F.3d 179 (9th Cir.1997). This issue is therefore no longer before the Court.

**3.** 541.118(b) although set forth as the salary basis requirement for the bona fide executive exemption, applies as well to the professional exemption. *See* 29 C.F.R. § 541.312.

which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

. . .

(b) *Minimum guarantee plus extras.* It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. . . .

29 C.F.R. § 541.118. Because the 'salary-basis' test is a creature of the Secretary's making, his or her own interpretation of the test must be followed unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (citations omitted). As long as the Secretary's interpretation of the statute is reasonable and "based upon a permissible construction of the statute," it will be upheld. *Auer,* 117 S.Ct. at 909; *Warmtex Enterprises v. Martin,* 953 F.2d 1133, 1136–37 (9th Cir.1992). The general rule of statutory construction that requires exemptions to be read narrowly does not apply to the Secretary's regulations. *Auer v. Robbins,* 117 S.Ct. at 912.

Both parties argue in support of their positions, opinions from the Department of Labor on the issue of the 'salary basis' requirements under the circumstances presented. First, Defendant cites a DOL opinion letter ruling from 1965 which provides:

The regulations do not require that the predetermined weekly amount required constitute or govern the employee's total weekly compensation. The salary requirement would be satisfied by a payment in the prescribed amount which is guaranteed to the employee for each week in which he performs any work on a project or projects for the employer, even though this is only a portion of the compensation paid him for such work and the total amount continues to be measured by an hourly or daily rate. *See* 29 C.F.R. § 541.118(b). . . . [T]he salary test of the regulations could be met . . . by simply guaranteeing the employee when he is employed for the project that

his payment at ·the agreed rates in each week when he works on the project will not be less than an amount equal to the amount prescribed in the regulations.

Opinion Letter of Wage–Hour Administrator, No. 395, September 22, 1965 (Sec. Opin. No. 395). Defendant additionally cites a subsequent opinion letter from 1995 construing § 541.118(a). The letter opines:

. . . Additional compensation can be paid to an exempt employee for hours worked beyond his standard workweek without affecting the employee's salary basis of pay. Thus, extra compensation may be paid for overtime to an exempt employee on any basis.

Opinion Letter of Wage–Hour Administrator, No. 1738, April 5, 1995 (Sec. Opin. No. 1738). Plaintiff in turn, relies on the DOL letter ruling opinion from 1988 which provides:

. . . an employee whose salary is computed on an hourly rate basis will be considered as employed "on a salary basis" if guaranteed a salary which is at least equal to the salary prescribed by the regulations, and [only] if there is a "reasonable relationship between the hourly rate, the regular or normal working hours, and the amount of weekly guaranteed." . . . [T]he "reasonable relationship" test will be met "if the weekly guarantee is roughly equivalent to the employee's earnings at the assigned hourly rate for his normal [workweek]."

Opinion WH–528, January 22, 1988 (*citing* § 22b03 of the Wage and Hour Field Operations Handbook); *see also, Brock,* 846 F.2d at 184 (finding no salary where hourly rate bore no reasonable relationship to regular rate of pay). Additionally, Plaintiff takes the view that the opinions are not actually conflicting, but address subtly different issues presented. Sec. Opin. No. 365, Plaintiff argues, addresses the requirements of § 541.118(b), while the "reasonable relationship" opinion is a construction of § 541.118(a). Moreover, in order to reach § 541.118(b), Defendant must *first* satisfy the salary requirement of § 541.118(a).

■■■ The Court finds that it is unable to defer to the Secretary's inconsistent and sporadic opinions on the issue of whether an hourly based pay with a minimum salary

guarantee is or is not consistent with the salary basis requirement of an exempt professional employee under the FLSA. *See Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 189 (3rd Cir.1988) (Stapleton, J., concur). The Court finds particularly persuasive, the concurring opinion by Judge Stapleton in *Brock v. Claridge Hotel and Casino,* where he writes:

> The Act itself creates the "[professional] capacity" exemption that Plaintiffs here claim, and the Act expressly provides that this exemption shall have the scope "defined and delimited from time to time by the regulations of the Secretary ...". 29 U.S.C. § 213(a)(1). Nothing resembling a "reasonable relationship" requirement can be found in the Secretary's regulations ...

*See Brock,* 846 F.2d at 191 (Stapleton, J., concur). Accordingly, the Court rejects the reasonable relationship test and finds that the determinant inquiry is whether the hospital's policy comports with the 'salary-basis' test as defined within the regulations at 29 C.F.R. § 541.118.

In this action, the hospital guaranteed each Plaintiff an amount which is at least the amount provided for under the Secretary's regulations. *See* PSOF, Exhs. 1 & 2. There is no dispute that each employee was actually paid a least the minimum guarantee. The dispute centers around the lawfulness of the hospital's policy of meeting the minimum guarantee by charging the employees paid time off benefits accounts to make up for any discrepancy between the hourly rate of pay and the minimum guarantee.[4]

■ Essentially, what Plaintiffs argue, is that the Hospital may not utilize Plaintiffs' paid time off benefits to meet the minimum guarantee where the hours worked amount to an hourly rate of less than the guarantee. In the Ninth Circuit, however, deductions from paid time off benefits, however, do not affect an employee's status as a salaried employee. *See Barner v. City of Novato,* 17

F.3d 1256, 1261 (9th Cir.1994). It appears that as long as the employee receives the minimum guarantee, even though paid time off benefits are included to reach the guarantee, that this method of payment is not inconsistent with a salary-basis rate of pay. The additional compensation above and beyond the guarantee is permitted under the Secretary's regulation, *See* 29 C.F.R. § 541.118(b). Accordingly, Defendants method of payment is not generally inconsistent with the salary-basis test as defined and delimited by the regulations of the Secretary. *See* 29 U.S.C. § 213(a)(1).

**B. Improper Deductions**

■ Defendant's principle argument is that because Plaintiffs ultimately received their guaranteed rate of pay, that any deductions taken were not inconsistent with the salary basis. Defendants argue additionally, however, that where Plaintiffs were given an option to use paid time off benefits rather than receive no pay for certain hours not worked, no improper deduction from pay resulted.

"[A] reduction in the paid leave time does not affect the Plaintiffs' status as salaried employee[s]." *Barner v. City of Novato,* 17 F.3d 1256, 1261 (9th Cir.1994). However, where an employee is subject to deductions where no paid leave time benefits are available, the employees salary basis may be affected. *See id.* at 1262.

■ An employee is *subject to* a deduction whenever the deduction is actually or significantly likely to be taken. *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (9th Cir.1997). In the absence of actual deductions, there must be a "clear and particularized policy—which "effectively communicates" that deductions will be made in specified circumstances." *Id.; Childers v. City of Eugene,* 1997 WL 393081, at *2, 120 F.3d 944, 946–47 (9th Cir.1997). "A written policy

---

4. Plaintiffs stated that on numerous occasions, Plaintiffs Shannon, Flaherty and Hood actually received less than their weekly guarantee. PSOF, ¶ 7, Exhs. 4–9. Because the payroll information provided by both parties was unclear as to what was actually paid to the parties, the Court ordered an additional hearing on the issue. The hearing took place on September 29, 1997.

Witness for both parties provided explanations of the records, and the parties stipulated to the accuracy of the information supplied. With the aid of the supplemental information, it became clear that Plaintiffs were not disputing that the Plaintiffs actual pay was less than the guarantee—only that it impermissibly included paid time off benefits to reach the guarantee.

which is nominally applicable to all employees, both salaried and non-salaried, and authorized deductions which would be proper only for non-salaried employees, does not, without more, communicate as a practical matter that such deductions will be made for employees that otherwise satisfy the salary test." *Stanley v. City of Tracy,* 120 F.3d 179, 184 (9th Cir.1997).

Under § 541.118(a)(1):

An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

It is undisputed that the Hospital had a policy of contacting nurses on days where the patient consensus was low, and telling them not to come into work, and that their options were to use paid time off benefits or receive no pay for the hours not worked. There is no dispute that this deduction is being specifically applied to exempt employees. However, Plaintiff has provided no evidence of a clear and particularized policy of reducing pay where insufficient paid time off benefits existed, only where they existed but the employee chose not to use them. Thus, the Hospital's policy does not clearly and effectively communicate to Plaintiffs that pay would be reduced where no paid time off benefits were available for absences due to low patient consensus. Accordingly, Plaintiffs are not subjected to improper deductions under the Hospital's staffing policy during occasions of low patient consensus in violation of 29 C.F.R. § 541.118(a)(1).

Likewise, under the Hospital's express written holiday agreement with Plaintiffs—set forth in the Deviated Work Schedule Agreement that applies specifically to those who sign it—Plaintiffs are required to take paid time off or receive no pay for any hours over eight taken off on a holiday. Again, however, Plaintiff provides no evidence that the policy expressly and particularly includes occasions where the option to take paid leave time off benefits is not viable. Accordingly, the holiday leave policy also does not subject Plaintiffs to impermissible deductions for ab-

sences of less than a day. *See* 29 C.F.R. 541.118(a)(2); *Abshire,* 908 F.2d at 487; *Accord B.N. Spradling, B.C. v. City of Tulsa, Oklahoma,* 95 F.3d 1492, 1501 (10th Cir. 1996).

In addition, during the supplemental hearing on September 28 (*see, supra,* n. 5), the Hospital's payroll records administrators explained that a particular flagging code is applied in the computer payroll system to the employees working under the pay guarantees. Accordingly, although it did not occur in the case of any of the Plaintiffs, if the pay had ever fallen below the minimum the Hospital would have been alerted by the flagging system, and supplemented the income accordingly. *See* Trans. for Hearing, September 28, 1997. The Court finds that the Defendant's policies do not preclude Defendant from claiming Plaintiffs are exempt employees under the FLSA.

## V. CONCLUSION

The FLSA expressly provides that this exemption shall have the scope "defined and delimited from time to time by the regulations of the Secretary ...". 29 U.S.C. § 213(a)(1). There are no issues fact in dispute in this action. Accordingly, as a matter of law, the Court finds Defendant's deviated work schedule agreement voluntarily entered into by each Plaintiff is generally consistent with the salary basis test for an exempt bona fide professional employee as defined under the Secretary's promulgating regulations. In fact, no Plaintiff ever received less than the minimum $698.00 per pay period. Additionally, the agreement and the policies did not subject Plaintiffs to impermissible deductions inconsistent with a salary-basis.

Defendants are entitled to summary judgment in their favor on the issue of the Plaintiffs' salary basis as bona fide professional employees exempt from overtime pay under the FLSA. Entry of judgment, however, is premature as it appears that Plaintiffs contest and intend to litigate the issue of whether Plaintiffs also meet the "duties test" requirement for an exempt professional employee. This issue clearly was not before the Court and is not decided herein. Accordingly, questions of fact currently exist

regarding Defendant's liability for overtime under the FLSA. For the foregoing reasons,

**IT IS THEREFORE ORDERED** Plaintiffs' Motion for Partial Summary Judgment filed on February 28, 1997 is **DENIED** [doc. # 37].

**IT IS FURTHER ORDERED** Defendant's Cross–Motion for [Partial] Summary Judgment filed on April 2, 1997 is **GRANTED** [doc. # 42].