**John J. HILBERT, Jr., et al.**

v.

**DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION,**
Appellant.

No. 92–7101.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 29, 1993.

Decided May 17, 1994.

Karen L. McDonald, Asst. Corp. Counsel, Washington, DC, argued the cause for appellant. Also appearing on the briefs were John Payton, Corp. Counsel at the time the briefs were filed, and Charles Reischel, Deputy Corp. Counsel, Washington, DC. Susan S. McDonald, Washington, DC, entered an appearance.

Michael J. Riselli, Washington, DC, argued the cause for appellees. Also appearing on the brief was James W. Pressler, Jr., Washington, DC.

Before: MIKVA, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the Court in part and concurring in the result in part filed by Circuit Judge STEPHEN F. WILLIAMS.

Opinion concurring in part and dissenting in part filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Opinion concurring in the result in part and dissenting in part filed by Chief Judge MIKVA.

STEPHEN F. WILLIAMS, Circuit Judge:

The Fair Labor Standards Act ("FLSA") requires employers to pay their employees time-and-a-half for overtime. 29 U.S.C. § 207(a). When this statute was originally enacted in 1938, it applied only to the private sector. In 1974, however, Congress extended the FLSA to cover employees of state and municipal governments. Pub.L. No. 93–259, 88 Stat. 55. The Supreme Court held this extension largely unconstitutional in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), but changed its mind in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Congress then amended the FLSA to soften its impact on state and local governments, permitting some overtime payments to be made in the form of compensatory time off rather than as cash. Pub.L. No. 99–150, 99 Stat. 787 (1985), codified at 29 U.S.C. § 207(*o*), (p).

The District of Columbia, however, does not use the FLSA's formula to compensate police officers at the rank of lieutenant and above for their overtime work. Depending on the circumstances, for each hour of overtime work these officers receive either one hour of compensatory time off or one hour's pay at their implicit hourly rate (their annual base pay divided by 2,080). See D.C.Code §§ 4–405, 4–1104. Seeking application of the FLSA's formula instead, police captains and lieutenants filed this suit in federal district court on December 6, 1990. The court rejected the District's argument that the officers are exempt from the FLSA's overtime requirements as "executive, administrative, or professional" employees, and so granted summary judgment for the plaintiffs. Because it determined that the applicable statute of limitations was two years, the court awarded them relief for the period from December 6, 1988 to the date of the order. *Hilbert v. District of Columbia*, 784 F.Supp. 922, *motion denied*, 788 F.Supp. 597 (D.D.C. 1992).

The appeal from this judgment has divided the panel. Chief Judge Mikva would affirm the judgment for essentially the reasons given by the district court. Judge Henderson and I reject those reasons in the portion of this opinion labeled "A", in which I speak for both of us. But in portion "B", which reflects only my own views and not those of Judge Henderson, I find an alternative ground on which to affirm the judgment for the period from December 6, 1988 to September 6, 1991. The net result is that the district court's judgment is affirmed in part and reversed in part.

A

■ The FLSA's overtime requirements do not cover people employed in an "execu-

tive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]". 29 U.S.C. § 213(a)(1). The parties agree that this exemption is available to the District only if the officers' jobs satisfy two requirements: their duties must be of a certain type, and they must be paid "on a salary basis". See 29 CFR §§ 541.1–541.3. To satisfy the latter requirement, generally, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." 29 CFR § 541.118(a). This general rule, however, is subject to some exceptions, including one that allows employers to deduct pay "when the employee absents himself from work *for a day or more* for personal reasons, other than sickness or accident". *Id.* § 541.118(a)(2) (emphasis added).[1]

The converse of this exception—that employees are *not* considered salaried if their pay is subject to reduction for absences of less than a day—is known as the "no-docking" rule, and it has applied ever since the first regulatory definition of payment "on a salary basis". See 19 Fed.Reg. 4405–06 (July 17, 1954). After Congress extended the FLSA to the public sector, the Department of Labor preserved this definition, which draws no distinction between private and public employment.

Soon after *Garcia,* however, the Department's Wage and Hour Division expressed concern about the interaction between this definition and the widespread laws that, in the interest of accountability, forbid payment to public employees for hours not actually worked. Under the conventional no-docking rule, employees subject to these laws could never qualify for the "executive, administrative, or professional" exemption. Worried about this outcome, the Wage and Hour Administrator decided not to enforce the no-docking rule with respect to public employees subject to docking under laws adopted

before April 15, 1986. See Letter Ruling, Department of Labor, Wage and Hour Division (Jan. 9, 1987), reprinted in Notice of Final Rule, 57 Fed.Reg. 37666, 37668 (Aug. 19, 1992).

This remedy still left state and local governments exposed to the threat of *private* lawsuits. Accordingly, on September 6, 1991 the Department issued an "interim final rule" superseding the no-docking rule for most public employees. Citing the need "to stem any accrual of additional liability to State and local governments", the Department found good cause to issue the rule without prior notice and comment and to make it immediately effective. See 56 Fed.Reg. 45824, 45825 (Sept. 6, 1991). The Department later modified the rule slightly in response to comments. See 57 Fed.Reg. 37666 (Aug. 19, 1992), codified at 29 CFR § 541.5d.

If the no-docking rule was valid as applied to the public sector before September 6, 1991, then the District loses with respect to that period. See *Kinney v. District of Columbia,* 994 F.2d 6, 10–11 (D.C.Cir.1993) (analyzing pay system that covers captains and lieutenants in the District's *fire* department). On appeal, therefore, the District asserts that the no-docking rule was *not* valid as applied to the public sector. Because Judge Henderson and I disagree about whether the District preserved this argument for appeal, this opinion defers consideration of that issue. But assuming the validity of the "interim final rule" of September 6, 1991,[2] the no-docking rule does not stand in the District's way for the period after that date. Since Judge Henderson and I join in rejecting the district court's reasoning, we therefore reverse its judgment with respect to this later period and remand for resolution of such issues as remain in dispute.

The district court based its judgment on the theory that no one who receives hourly overtime is paid "on a salary basis". This theory has some appeal. Though it has been

---

1. Deductions for absences of a day or more are permissible even in the case of sickness or accident when made "in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability". *Id.* § 541.118(a)(3).

2. Though the plaintiffs did challenge this rule, that challenge is not currently before us.

rejected in the Fourth and Fifth Circuits, see *York v. City of Wichita Falls,* 944 F.2d 236, 242 (5th Cir.1991); *Hartman v. Arlington County,* 720 F.Supp. 1227, 1229 (E.D.Va. 1989), *aff'd,* 903 F.2d 290 (4th Cir.1990), dicta in other circuits have endorsed it. See *Abshire v. County of Kern,* 908 F.2d 483, 486–87 (9th Cir.1990); *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 184–85 (3d Cir.1988).[3] The underlying logic, as we said in *Kinney,* is that "[p]ayment on salary basis is thought to identify executive, administrative, and professional personnel precisely because it indicates employees who are given discretion in managing their time and their activities and ... are not answerable merely for the number of hours worked...." *Kinney,* 994 F.2d at 11.

Even before September 6, 1991, however, there were difficulties with automatic denial of executive status for employees receiving hourly overtime. The Secretary's regulations focus chiefly on whether an employee's pay is subject to impermissible *deductions,* not on how any *extra* pay is computed. According to the regulations, an employee who receives, every two weeks, a "predetermined amount" (his biweekly base pay) that "constitut[es] ... part of his compensation" and is subject only to permissible deductions *"will be* considered to be paid 'on a salary basis' ". 29 CFR § 541.118(a) (emphasis added). Indeed, in a subsection headed "Minimum guarantee plus extras", the regulations specifically note that "additional compensation besides the salary is not inconsistent with the salary basis of payment." *Id.* § 541.118(b).

On the other hand, the regulations make clear that "extras" defeat salaried status when employers use them for the purpose of circumventing the regulatory requirements. See *id.* And two of the three examples of permissible "extras" offered by the regulations involve sales commissions, which are easily distinguishable from hourly overtime.

As Judge Henderson discusses in her separate opinion, the third example is much harder to distinguish. Apparently based on *McReynolds v. Pocahontas Corp.,* 192 F.2d 301 (4th Cir.1951), it declares that an employee will be considered salaried even though he is paid per shift worked as long as he is guaranteed at least the regulatory minimum for any week in which he does any work. Thus an employee who earns $100 per shift and is guaranteed $250 each week is salaried even though he receives extra money on top of his minimum guarantee whenever he works three or more shifts in a week.

Chief Judge Mikva distinguishes this example from hourly overtime on the ground that a shift typically lasts longer than an hour. See Op. of Mikva, C.J., *infra* at 441; cf. *Claridge Hotel & Casino,* 846 F.2d at 185. In view of the "interim final rule", however, we need not address whether this distinction is meaningful in order to reverse the district court's judgment with respect to the period after September 6, 1991. If it is consistent with salaried status to calculate *deductions* from employees' pay on an hourly basis, it is just as consistent with salaried status to calculate *additions* to their pay on that basis. The payment of hourly overtime certainly does suggest that the employer "expects a certain number of hours from his employee in the first instance", see Op. of Mikva, C.J., at ——, but the same is true of hourly docking: public-sector employees who can lose an hour's pay for missing an hour of work obviously are expected to work the specified number of hours even if they have nothing to do. The current regulations, then, make clear that this expectation is perfectly consistent with payment "on a salary basis".[4]

---

3. District courts also have split on the issue. Compare, e.g., *Pautlitz v. City of Naperville,* 781 F.Supp. 1368, 1371 (N.D.Ill.1992) (treating overtime pay as a "bonus scheme" that does not defeat salaried status), with, e.g., *Banks v. City of North Little Rock,* 708 F.Supp. 1023, 1024 (E.D.Ark.1988) ("Payment of a fixed amount plus additional hourly wages for extra hours worked is not consistent with salaried status.").

4. Chief Judge Mikva advances some evidence that the Department of Labor did not think that its relaxation of the no-docking rule in the public sector altered the regulatory treatment of hourly overtime. Op. of Mikva, C.J., at 441. To the extent that is true, it is at least as consistent with Judge Henderson's view—that hourly overtime, in and of itself, *never* defeated salaried status—as with Chief Judge Mikva's assumption to the contrary. The Department's action is, in any event,

Not only would it be incoherent to pay attention to this expectation only in the context of overtime and not in the context of docking, but it would also be misguided. Even though public accountability principles do not *require* overtime as they do docking, such a test would simply discourage state and local governments from ameliorating the required docking with offsetting overtime payments—a much more apt and likely form of amelioration than the across-the-board salary increases Chief Judge Mikva suggests.

### B

■ Now speaking only for myself, and not for Judge Henderson, I address the period before September 6, 1991. Though the District argues that the no-docking rule could not validly be applied to the public sector during this period, it failed to challenge the rule's validity below. Instead, it discussed only how the rule should be *interpreted*, raising arguments that we have since rejected. See *Kinney*, 994 F.2d at 10–11; but see *McDonnell v. City of Omaha*, 999 F.2d 293 (8th Cir.1993). Because the no-docking rule therefore offers a clear ground on which to affirm the district court's judgment with respect to the earlier period, I need not pass on the validity of the district court's reasoning for that period.

Judge Henderson is not quite correct to suggest that in its cross-motion for summary judgment below, "the District contested the applicability of the no-docking rule to public sector employees". Op. of Henderson, J., at 434. What the District contested was the rule's applicability *to the particular public-sector employees in question*. And the reason the rule was inapplicable, according to the District, was *not* that it was invalid as applied to the public sector, but rather that it meant something different in the public than in the private sector. The District suggested that in the public sector, the no-docking rule applied only when an employee's pay *actually was* docked because of an absence of less than a day—not for the entire period in which his pay was *subject to* such docking. See Amended Memorandum of Points and

Authorities in Support of Defendant District of Columbia's Cross–Motion for Summary Judgment (Nov. 7, 1991) 9–11; Defendant's Statement of Additional Material Facts as to Which There Is No Genuine Issue (Nov. 26, 1991) 4–7; Transcript of Motion for Summary Judgment (Feb. 7, 1992) 8–9. As the District explained below, "The way that we are arguing that [the rule] should be interpreted is that an employee would only [fail the salary-basis test] during the period in which his pay was docked for taking leave." Transcript of Motion for Summary Judgment (Dec. 11, 1991) 13. The District never even hinted that a contrary interpretation of the rule would render it invalid as applied to the public sector.

The passage that Judge Henderson quotes from the District's brief, see Op. of Henderson, J., at 434, is not to the contrary. Under the District's pay system, *actual* docking is quite rare, for it is required only when the officer in question has already exhausted all his available leave time. The passage that Judge Henderson quotes simply contends that the mere *existence* of such a pay system (as opposed to evidence of actual docking) does not defeat the FLSA's exemption for anyone. Thus, in the phrase that Judge Henderson elides out of the passage, the District urged the lower court to interpret the no-docking rule "in accordance with" the three decisions that had understood the rule to apply only when actual docking occurred. See *Atlanta Professional Firefighters Union v. Atlanta*, 920 F.2d 800, 805 (11th Cir.1991); *Harris v. District of Columbia*, 709 F.Supp. 238, 241–42 & n. 10 (D.D.C. 1989); *D.C. Nurses Ass'n v. District of Columbia*, 29 Wage & Hour Cases (BNA) 868, 868–69, 1988 WL 156191 (D.D.C. Jan. 28, 1988).

It may well be that the District picked up the invalidity argument from the Department of Labor, which—after final judgment in the district court—said for the first time that the no-docking rule, as applied to the public sector before September 6, 1991, was contrary to Congress's intent in extending the FLSA's "executive, administrative, or professional"

completely inconsistent with Chief Judge Mikva's view that the key inquiry is whether employees

are paid "for putting in a certain amount of time on the job", *id.* at 438–39.

exemption to the public sector. See 57 Fed. Reg. at 37671/3 (Aug. 19, 1992). The District then raised the claim on appeal in *Kinney,* but because of its failure to raise it below we declined to entertain the question. See *Kinney,* 994 F.2d at 9–10. This case presents precisely the same situation.

\* \* \* \* \* \*

Judge Henderson and I unite in reversing the district court's judgment with respect to the period beginning September 6, 1991. But Chief Judge Mikva and I agree (albeit for different reasons) that the district court's judgment should be affirmed with respect to the period between December 6, 1988 and September 6, 1991. Accordingly, the district court's judgment is affirmed in part and reversed in part. We remand the case for disposition of any remaining issues, such as plaintiffs' claim that the nature of their work is inconsistent with the FLSA's "executive, administrative, or professional" exemption.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring in part and dissenting in part:

I join the portion of the majority opinion reversing the district court's judgment as it relates to the period after September 6, 1991; the majority does not go far enough, however, for I would reverse the district court outright.

On September 6, 1991, the Department of Labor (DOL) promulgated a rule, effective immediately, making the no-docking rule no longer applicable to determine whether *public* sector employees are "salaried employees" within the meaning of the exemption for executive, administrative or professional employees (executive exemption).[1] *See* Final Rule, 57 Fed.Reg. at 37672 (the 1991 rule). The majority interprets the 1991 rule as dispositive: before September 6, 1991, the

executive exemption was unavailable to the District of Columbia (District) because it docked the pay of its employees for absences of less than one day; after September 6, 1991, the executive exemption is available to the District because the no-docking rule no longer stands as an obstacle. The majority declines to consider the District's argument that the no-docking rule is invalid as applied to public sector employees, irrespective of the 1991 rule, concluding that the District waived the argument by failing to raise it below. Because I believe the District did challenge the validity of the no-docking rule before the district court, I disagree.

In at least one of its filings below, the District argued that, although the regulation making the no-docking rule inapplicable to public sector employees did not become effective until September 6, 1991,

> this Court can and should carefully consider the Department's comments in determining the application of the *previous* regulation to the public employees in this case prior to September 6, 1991. This Court must then conclude ... that the existence of a public pay system that provides for the deduction of pay when all leave is exhausted for absences of less than a day is insufficient to defeat an otherwise qualified exemption under 29 U.S.C. § 213(a)(1).

*Amended Memorandum of Points and Authorities in Support of Defendant District of Columbia's Cross–Motion for Summary Judgment* at 12 (emphasis added). I would hold that this language put both the plaintiffs and the trial court on sufficient notice that the District contested the applicability of the no-docking rule to public sector employees, whether they be generally "subject to" it or merely docked for *actual* absences, without confining its argument to the effective date of the 1991 regulation. Accordingly, I believe that the validity *vel non* of the no-

---

1. The 1991 rule provides:

    An employee of a public agency who otherwise meets the requirements of § 541.1, 541.2, or 541.3 shall not be disqualified from exemption on the basis that such employee is paid according to a pay system established by a statute, ordinance, or regulation, or by a policy or practice established pursuant to principles

of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one workday....

29 C.F.R. § 541.5d.

docking rule as applied to public sector employees is appropriately before us.

I would hold the no-docking rule invalid as applied to public sector employees. The DOL promulgated the no-docking rule in 1954 based on its research revealing that an employee whose pay was docked for an absence of less than one day usually did not meet the other requirements to fall within the executive exemption. *See* Final Rule, 57 Fed.Reg. at 37666, 37672. The DOL investigated only the *private* sector, however, because the FLSA did not apply to public sector employees at that time. Although docking a private sector employee's pay may indicate that the employee is not an executive, administrative or professional employee, that inference is not appropriately made with regard to a public sector employee because of the different rationale used to support docking in the public employment context.

As a matter of public policy, a public sector employee is subject to pay docking for any absence. *See generally* Final Rule, 57 Fed. Reg. at 37672 ("[P]revailing public sector pay systems operating under statute, ordinance, regulation, or other established public policy requir[e] all employees, including otherwise-exempt managers and executives, to use accrued leave time or incur a reduction in pay for any absences from work."). The docking is rooted in the principle of public accountability, that is, "governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for the expenditure of public funds." Final Rule, 57 Fed.Reg. at 37672. The circumstance that motivated the DOL's promulgation of the no-docking rule, that an employee whose pay is docked for an absence of less than one day will not ordinarily meet the other requirements to qualify as an executive, does not necessarily exist in public sector employment. The docking of a private sector employee's pay indicates that the employee is in essence "punching the clock" while at work. An employee who must strictly account for his hours is unlikely to have primary duties that are executive, administrative or professional in nature, as required by the exemption. *See* 29 C.F.R. § 541.1(e)(2). That conclusion cannot be drawn regarding a public sector employee whose pay is docked based on public accountability—if the need to be accountable to the public results in the docking of a government employee's pay, even those at the highest levels of the government hierarchy, those whose duties are unquestionably executive in nature, may see their pay docked. Because docking a public sector employee's pay for an absence of less than one day does not indicate one way or the other that the employee does not otherwise satisfy the requirements of the executive exemption, it cannot validly gauge whether the employee fits the exemption. Therefore, the no-docking rule should not render the exemption unavailable to the District before September 6, 1991.

The question then becomes whether the ground used by the district court for its grant of summary judgment to the plaintiffs, that is, the plaintiffs' receipt of overtime compensation calculated on an hourly basis, renders the exemption unavailable to the District before September 6, 1991. I would hold that it does not. The DOL regulation states that "additional compensation besides the salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b). At least two circuits have interpreted section 541.118(b) to mean that employees can be considered salaried even though they receive overtime compensation calculated on an hourly basis. *See Hartman v. Arlington County,* 720 F.Supp. 1227, 1229 (E.D.Va. 1989), *aff'd,* 903 F.2d 290 (4th Cir.1990) (overtime compensation calculated on an hourly basis is "expressly permitted by § 541.118(b) and does not defeat the executive exemption"); *York v. Wichita Falls, Texas,* 944 F.2d 236, 242 (5th Cir.1991) ("Paying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption."); *see also Fair Labor Standards Handbook for States, Local Governments and Schools* (DOL's Field Operations Handbook) at 21 (May 1987) (payment of additional compensation calculated on an hourly basis does not destroy employee's salaried status). *But see Thomas v. County of Fairfax,* 758 F.Supp. 353, 360 (E.D.Va.1991). I agree with those two circuits.

Although section 541.118(b) does not expressly refer to *hourly* overtime compensa-

tion as a form of permissible additional compensation, the regulation does include three examples of allowable additional compensation, the third of which manifests, at least to me, that overtime compensation calculated on an hourly basis should not preclude the exemption's applicability. It declares that an employee who is guaranteed a minimum salary but is also paid for extra days or shifts worked is nonetheless considered paid on a salary basis. 29 C.F.R. § 541.118(b).[2] Extra pay for additional days or shifts worked is equivalent to extra pay for additional hours worked. Accordingly, I believe that the plaintiffs' receipt of hourly overtime compensation does not preclude the District from invoking the executive exemption.

I join the majority in reversing the district court for the period after September 6, 1991. I would also reverse the district court as to the earlier period as well, however, because I believe that neither the no-docking rule nor the plaintiffs' receipt of hourly overtime compensation rendered the executive exemption unavailable to the District then.

MIKVA, Chief Judge, concurring in the result in part and dissenting in part:

The Fair Labor Standards Act ("FLSA" or "Act") requires employers—including state and municipal employers—to pay one-and-one-half times their employees' regular hourly rate for any overtime hours they work. Claiming coverage under the Act, a class of police captains and lieutenants ("plaintiffs") sued for a declaratory judgment, liquidated damages, and backpay amounting to the difference between the FLSA rate and the District's lower rate. The District defends on the ground that the plaintiffs are exempt from the Act under the "executive exemption," which applies to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a)(1) (West Supp.1993). The district court disagreed, holding that the District of

Columbia pays its police captains and lieutenants on an hourly basis, and not "on a salary basis"; as such, the plaintiffs are not "executive employees" under applicable Department of Labor regulations, and the District must pay them the FLSA overtime rate. I would affirm the judgment and rationale of the district court in its entirety because I think hourly overtime, to which these employees have at all relevant times been entitled, defeats the executive exemption. Accordingly, I concur only in the result reached by Judge Williams with regard to the time period before September 6, 1991 and I dissent from both of my colleagues' opinions and their result with regard to the subsequent time period.

### I. Background

The Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. (West 1978 & Supp. 1993), was first enacted during the Great Depression as a means of improving the standard of living of workers. Id. § 202 (congressional finding and declaration of policy). Primarily governing hourly wage rates, it is designed to improve the lot of the hourly wage earner through minimum wage and maximum hour regulation. See id. § 206 (minimum hourly wage); id. § 207 (maximum hour). As amended, the Act currently applies to state and local government employees as well as to private employees. 29 U.S.C.A. § 203(e). Among other things, it requires employers to pay all employees covered by the Act overtime pay of one-and-one-half times their ordinary hourly rate. 29 U.S.C.A. § 207(a)(1). However, under the "executive exemption," the time-and-a-half requirement does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a)(1).

The District of Columbia has classified police captains and lieutenants as falling within the executive exemption. By municipal ordi-

---

**2.** 29 C.F.R. § 541.118(b) provides:

It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.... Another type of situation in

which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work.

nance, the District pays them (and all other police officers, including the chief) an hourly overtime rate equivalent to their ordinary hourly rate. D.C.Code §§ 4–1104(c)–(f). Although captains and lieutenants receive a guaranteed weekly salary (subject to docking for absences), that salary is based upon a 40-hour workweek, and each hour of overtime work is paid at the same rate as each hour of non-overtime work. *Id.* These employees sued for a declaratory judgment that they are not, in fact, exempt from the Act, and that the District must pay them time-and-a-half for overtime. They also sought liquidated damages and backpay measured by the difference between the statutory requirement and the District's overtime rate for all overtime hours worked since the Act was made applicable to municipal employers in 1985. *See Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

The meaning of the executive exemption turns on Department of Labor ("DOL") regulations interpreting the Act. Under these regulations, an employee is exempt only if she meets both the "primary duties test" and the "salary basis test." The primary duties test looks at the nature of the employee's job. 29 C.F.R. § 541.2(f). As this case comes before us, there is no dispute that the police captains and lieutenants satisfy that test for the exemption. Instead, the dispute is over the "salary basis test," which evaluates the way in which the employee is paid. An employee is an "executive, administrative, or professional" under the salary basis test if she is paid on a job function basis, rather than on an hour-to-hour basis. This distinction is in keeping with the apparent purpose of the Act to protect hourly wage earners through minimum wage and maximum hour regulation. Thus understood, a salaried employee is beyond the scope of the FLSA. Specifically, the regulations state:

> An employee will be considered paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked....

29 C.F.R. § 541.118(a) (1991).

I think the central and dispositive question in this case is whether an employee can receive *hourly overtime payments,* over and above a minimum weekly predetermined amount, and still be paid "on a salary basis" and not on an hourly basis. D.C.Code § 4–1104(f)(1)(B). The DOL regulations continue:

> (b) *Minimum guarantee plus extras.* It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work....

29 C.F.R. § 541.118(b). Although this section explains that additional compensation for extra time worked is not necessarily inconsistent with payment on a salary basis, it does not speak directly to the question whether additional compensation paid *by the hour, for working more than a prescribed number of hours in a workweek,* defeats the exemption.

Despite this ambiguity, the parties did not initially argue this issue below. Instead,

their dispute focused on another facet of the salary basis test known as the "no-docking rule." An exception to the salary basis test of section 541.118(a) covers absences from work of a day or more; an employee can have his pay docked for such absences without losing the exemption under the salary basis test. 29 C.F.R. § 541.118(a)(2). But the negative inference of this exception mandates that if absences of *less* than a day lead to a reduction in salary, then the employee is not paid "on a salary basis." *See D'Camera v. District of Columbia,* 693 F.Supp. 1208, 1212 (D.D.C.1988). This negative inference is known as the "no-docking rule." Plaintiffs alleged before the district court that their salaries were subject to reduction for absences of less than a day and that they could not, therefore, fall within the executive exemption. Subsequently, on September 6, 1991, the DOL revised its regulations, making the "no-docking rule" inapplicable to public employees. 56 Fed.Reg. 45824.

In a recent case, this Circuit applied the "no-docking rule" to hold that D.C. firefighters (paid under the same system as the police officers in the present case) were not entitled to the "executive, administrative, or professional employee" exemption prior to September 6, 1991, because they could have their salaries docked for absences of less than a day. *Kinney v. District of Columbia,* 994 F.2d 6 (D.C.Cir.1993). In that case, the District argued that the "no-docking rule" was an unreasonable construction of the FLSA, as evidenced by the DOL's subsequent amendment of the rule for public-sector employees. But the District raised this defense for the first time on appeal, and the Court therefore refused to consider it. *Id.* at 9–10.

Although the parties' arguments before the district court focused on the "no-docking rule," the court raised *sua sponte* the separate issue of the employees' entitlement to hourly overtime. This issue proved dispositive below. The district court held that the police captains and lieutenants are not within the executive exemption because they receive overtime pay on an hourly basis, and thus they are not paid "on a salary basis." Accordingly, the court entered summary judgment for the police captains and lieutenants on this ground and did not decide the "no-docking rule" issues. *Hilbert v. District of Columbia,* 784 F.Supp. 922 (D.D.C.), *motion for reconsideration denied,* 788 F.Supp. 597 (D.D.C.1992). The District appeals. Besides contesting the district court's grounds for decision, the District also takes issue (as a preemptive strike) with the potential alternative ground of affirmance on the basis of the "no-docking rule." On this latter ground, the District asserts the argument that was found to have been waived in *Kinney:* that the "no-docking rule" is unreasonable as applied to state and municipal employees.

Judge Williams would hold that the District waived that argument in the present case as well, and he would affirm the district court's decision for the period prior to September 6, 1991 under the "no-docking rule," while reversing for the subsequent period because of the regulatory change in that rule. Judge Henderson agrees that the old "no-docking rule" would defeat the District's claim for the pre-September, 1991 period, but she would hold that the District did not waive its argument for the invalidity of that rule, and that the rule was in fact invalid. Both Judge Williams and Judge Henderson agree that the new "no-docking rule" allows the District to claim the executive exemption for these employees, and they would reverse the district court's judgment for the period subsequent to September 6, 1991. But I would affirm the decision of the district court in its entirety on the ground that hourly overtime defeats the executive exemption. As a consequence, I would not decide the "no-docking rule" issues, and I express no opinion on those issues here. I concur solely in the result reached by Judge Williams as to the period prior to September 6, 1991, and I dissent from both the result and the reasoning of the majority as to the subsequent period.

## II. Discussion

Circuit courts are split on the hourly overtime issue. The Third and Ninth Circuits have agreed with the district court that hourly overtime supplementing a guaranteed weekly salary strongly suggests compensa-

tion on an hourly basis. *See Abshire v. County of Kern,* 908 F.2d 483, 486 (9th Cir. 1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991) ("Such additional compensation for extra hours worked is … not generally consistent with salaried status."); *Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 185 (3d Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988) ("Such encouragement [to work more hours] is inconsistent both with salary payment and executive employment."). In contrast, the Fifth and Fourth Circuits have held that hourly overtime does not destroy the exemption for an employee who otherwise is paid a guaranteed salary without regard to hours worked. *York v. City of Wichita Falls,* 944 F.2d 236, 242 (5th Cir. 1991) ("Paying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption."); *Hartman v. Arlington County,* 720 F.Supp. 1227 (E.D.Va.1989), *aff'd,* 903 F.2d 290 (4th Cir. 1990) (same).

I agree with the Third and Ninth Circuits. The executive exemption covers only those employees who are paid "on a salary basis." The salary basis test is designed to distinguish "executive" employees, who are paid on a job function basis, from non-executive employees, whose compensation depends upon the number of hours they put in. The opposite of payment on a salary basis, then, is payment on an hourly basis. And the difference between these two categories of compensation is the difference between payment for performing a specified job and payment for putting in a certain amount of time on the job. When an employee is paid for overtime in hourly installments, that implies that she is paid to work a certain number of hours in the first place, because any hour beyond that is paid as an hour of "extra" time at work. By contrast, when an employee is paid on a salary basis, an additional hour is not considered an "extra" hour because she is paid to perform a certain set of tasks and not to work for a set amount of time. That hour, then, is a standard part of her job and does not entitle her to overtime compensation.

This is not to say that an employee can never receive additional compensation and

yet be "paid on a salary basis." On the contrary, additional payments are explicitly allowed under paragraph (b) of the DOL regulations, entitled "Minimum guarantee plus extras," *see supra* page 435, which expressly permits employees to earn additional payments on top of a guaranteed minimum salary and yet remain within the executive exemption. However, it does not suggest that *all* additional payments are permissible; nor does it specifically address the question whether those additional payments may be made on an hourly basis. If DOL had meant that all additional payments were permissible, it could have said so. Instead, by giving examples of permissible additional payments, DOL clearly intended for some other additional payments to be impermissible.

Paragraph (b) gives three examples of legitimate additional payments: the first two are commission or percentage payments; the third example is "an employee paid on a daily or shift basis, if the employment agreement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work." 29 C.F.R. § 541.118(b). These examples are meant to be illustrative, not exclusive, but a court's creativity should be tempered by the general rule that exemptions from the FLSA requirements are to be narrowly construed to fulfill Congress's purpose of providing broad federal employment protection. *E.g., Abshire,* 908 F.2d at 485.

None of these examples alters my conclusion that hourly overtime defeats the salary basis test. It is true that the third example allows that payment on a daily or shift basis can sometimes be payment "on a salary basis." But employees virtually always are paid for *some* increment of time on the job, whether it be an hour, a shift, a day, a week, or a year. Yet we know that the increment is not irrelevant, because the essential distinction drawn by the DOL regulations is between payment on a salary basis (which presumably includes payment on a weekly or yearly basis) and payment on an hourly basis. Therefore, the third example in paragraph (b) merely illustrates the DOL's deter-

mination that daily or shift payment, supported by a guaranteed weekly minimum, is more analogous to weekly payment than to hourly payment. This is essentially a line-drawing question, and I think the DOL has drawn a reasonable line in paragraph (b) between hourly compensation and compensation for larger increments.

Indeed, this line between hourly and non-hourly compensation is particularly well-suited to the Act, which seeks to ensure that hourly wage earners receive fair compensation for their labor. Congress's concern for the hourly laborer led it to base its remedies upon the hourly compensation scheme, providing for a minimum wage and a maximum-length workday (before the time-and-a-half requirement kicks in)—both measured by the hour. Thus, the measuring cup for distinguishing between exempted salaried employees and covered employees has always been the hourly unit. That it sometimes leads to arbitrary line-drawing is not a rationale for abandoning the distinction. Congress and the DOL were aware that this regulatory scheme would require a means of distinguishing between covered and exempt employees, and they chose the hourly measure. True, DOL has endeavored in paragraph (b) to allow some play in the executive exemption, permitting some payments for extra effort by an exempted employee. But such allowances cannot include a measurement of extra effort based solely on hours worked without destroying the basis for the distinction between covered and exempted employees. Judge Henderson's disavowal of the shift/hour distinction, Op. at 435–36, thus fails to recognize that *some* time-based distinction must be made if we are to apply the executive exemption to some employees and not to others, as the Act plainly contemplates. It begs the question whether the hourly measure is a proper dividing line. I think it is, and I think to be applied faithfully it must exclude employees receiving hourly overtime from the executive exemption.

The District responds, and Judge Henderson apparently agrees, Op. at 435–36, that paragraph (b) is best construed to mean that an employee may always earn extra money over and above a sufficient guaranteed minimum salary and yet be paid "on a salary basis," regardless of the increments of time for which the additional payments are made. *See McReynolds v. Pocohontas Corp.*, 192 F.2d 301, 303 (4th Cir.1951) ("Any formula which results in such a guarantee is sufficient."). As one district court has noted in a footnote, employees are traditionally given bonuses for extra time put into a job, and "we see little reason why the payment of overtime would negate the exempt status of an employee." *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899, 903 n. 5 (S.D.N.Y.), *rev'd on other grounds sub nom. Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). Thus, the District argues that the "minimum guarantee" regulation should be read only to ensure that employees receive a minimum guaranteed salary if they are to be exempt, and to allow additional payments beyond that regardless of their precise form.

I disagree. There is a difference between a bonus for hard work and an entitlement to overtime pay for each hour worked that is crucial to the nature of the employment relationship. A bonus goes to an employee who has done the task for which she is paid a salary, and who has exceeded expectations in some way. The employer may show his appreciation for her hard work (including extra time put into the job) by granting additional compensation, and still the employee will be paid on a salary basis. But when the bonus becomes a contractual entitlement, and when it is measured by the hour, the employee is no longer paid on a salary basis. Hourly overtime is purely an incentive to work more hours, not to do a better job. *See Brock*, 846 F.2d at 185. It denotes that payment for regular time is also measured by the hour—even if the latter is paid in weekly installments—because an employer cannot measure overtime on an hourly basis unless he expects a certain number of hours from his employee in the first instance. In this case, the plaintiffs are expected to work forty hours a week. If they work more hours, they receive overtime pay by the hour. This is employment on an hourly basis. The fact that the District pays it out in the form of a weekly "salary" does not change the fact that

this "salary" is determined solely by reference to the number of hours worked. And when an employee's compensation depends on the hours she puts in, she is paid on an hourly basis—even if she receives a guaranteed minimum weekly wage.

Judge Williams's opinion relies on another ground to differ with my approach to the hourly overtime question. He rests his disagreement on the DOL's regulatory change to the "no-docking rule." Apparently, Judge Williams believes that by changing the "no-docking rule" to provide that salary reductions for hourly absences need not defeat the executive exemption, the DOL must also have intended to do likewise for hourly *additions* to a public employee's salary. Op. of Williams, J., *supra* at 432–33.

This simply does not follow. The DOL changed the "no-docking rule" out of concern that virtually no public employees would fall within the executive exemption because nearly all could have their salaries docked for absences from work of less than a day. 56 Fed.Reg. 45824 (Sept. 6, 1991). This is because the public sector takes pains to avoid the appearance of dubious employment practices—such as paying out salaries to patronage "employees" who perform no actual function except collecting a paycheck. *Id.* at 45825. In that respect, public employees face different circumstances than private employees, and the DOL determined that they should be subject to a less-stringent "no-docking rule" to take account of these different circumstances. *Id.* Nowhere did the DOL suggest that public sector circumstances differ from those of the private sector with respect to hourly overtime, and the DOL accordingly made no changes to any aspect of the salary basis test for public or private employees except for the relaxation of the "no-docking rule."

On the contrary, in implementing the final regulation relaxing the "no-docking rule," the DOL *expressly stated* that it was not changing the preexisting rules for salary additions. 57 Fed.Reg. 37666, 37673 (August 19, 1992). In response to public comments suggesting that the new rules should address additional compensation as well as docking, DOL responded:

> Exempt employees may receive additional compensation in addition to a guaranteed salary without defeating the salary basis *in accord with § 541.118(b), entitled "Minimum guarantee plus extras," which was not open for comment during the present rulemaking affecting the public sector.*
>
> The Department expects to address this issue as appropriate in proposed revisions of Part 541 at a later date.
>
> The new § 541.5d modifies the "salary basis" test *only* by providing that an otherwise-exempt public sector employee under certain circumstances would not be disqualified from exemption where a deduction is taken from the employee's pay for part-day absences. The change was proposed because of public sector employers' inability, because of principles of public accountability, to avoid not paying their employees for hours not worked, thereby necessitating deductions for such part-day absences. *Principles of public accountability do not provide a basis for making a special public sector rule for additional compensation paid.*

*Id.* (emphasis added).

There is no reason to think, then, that the change in the "no-docking rule" in any way affected the impact of hourly overtime on the executive exemption. On the contrary, the DOL chose to alter the "no-docking rule" and to leave untouched both the preexisting definition of "salary basis" and the preexisting explanation of "minimum guarantee plus extras." Whatever those sections meant before the regulatory change is what they mean today—for public and private employees alike. And what they meant and continue to mean is that hourly overtime payments defeat the executive exemption.

Far from "incoherent," maj. Op. at 433, this strikes me as the only sensible way to view the regulatory change. Judge Williams's response—that such a system would discourage public employers from paying hourly overtime to compensate for the "no-docking" rule—ignores two rather obvious points. First, there is no evidence to suggest that DOL ever considered whether employers would be so discouraged; if it had seen this as a problem, it could have specified that hourly overtime would no longer defeat the exemption for public employees. In-

**442**

stead, it expressly chose to leave intact the effect of additional compensation on the salary basis test. Second, even if Judge Williams's concern for the public employer's ability to compensate and yet claim the exemption were valid, this regulation does not foreclose such compensation. On the contrary, if the public employer finds that the "no-docking" rule discourages potential employees or demoralizes current ones, the employer may simply raise their base salaries or grant non-hourly bonuses for hard work—without losing the executive exemption. But the employer may not claim the exemption if he decides instead to convert his salaried employees into hourly ones. Hourly overtime has that effect.

I would hold that the plaintiffs are paid on an hourly basis under the District of Columbia's compensation scheme: therefore, they are not covered by the executive exemption and the District owes them time-and-a-half overtime for both the pre- and post-September 6, 1991 time periods. Accordingly, I concur only in the result as to the period prior to the regulatory change, and I dissent as to the subsequent period.