52 F.3d 337
 130 Lab.Cas. P 33,223
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ursula BENNETT, Ronald L. Chavez, Larry Cook, Donald
Crutchfield, Richard Fusco, Diane Gutierrez, David Iverson,
Herman E. Ivory, Michael Maestas, Felimon Martinez, Greg
Martinez, Charles Melton, Steve V. Mora, Ramon Ordonez, Mary
Ellen Ortiz, John Van Sickler, Mike Sisneros, Grace
Valencia, Viky Woodworth and Billy Zamora, Plaintiffs-Appellees,
v.
ALBUQUERQUE, CITY OF, Defendant-Appellant,
and
Arthur BLUMENFELD, Chief Administrative Officer,
individually and in his official capacity; Ralph Ruiz,
former Director of the Department of Corrections,
individually and in his official capacity; Earl C. Waid,
Director of the Department of Corrections, individually and
in his official capacity; ROBERT BROWN, Director of
Employee Relations Department, individually and in his
official capacity, Defendants.
 No. 94-2094.
(D.C. No. CIV-92-1029-WWD/DJS)
 United States Court of Appeals, Tenth Circuit.
 April 18, 1995.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, BARRETT, and EBEL, Circuit Judges.
 
 
 1
 This is an action brought under the Fair Labor Standards Act (FLSA).[2] Plaintiffs, all current or former employees of the City of Albuquerque, filed suit against the City to recover past due overtime compensation. In response, the City argued plaintiffs were not entitled to coverage because they hold exempt management positions.[3] Following a three-day bench trial, the district court rejected the City's argument and awarded damages in the form of past due overtime wages.[4] The City now appeals, challenging both the finding that the exemption is inapplicable and the magistrate judge's calculation of damages.
 
 I. Facts
 
 2
 Plaintiffs work at the Bernallilo County Detention Center in Albuquerque. The center is a prison facility housing approximately 800 inmates. It is comprised of two distinct towers and a booking area. Three types of employees staff the facility. Corrections officers are the most numerous. They are assigned to a designated area during each shift and are responsible for maintaining security and safety in that area. In addition, three or four lieutenants are assigned to rove the floors in each tower. They supervise and help the corrections officers when necessary. Finally, each shift has one captain who is in charge. Plaintiffs are lieutenants and captains at the facility.
 
 
 3
 The center operates on a twenty-four hour basis in three eight-hour shifts. During each shift, all employees are entitled to a one-half hour meal break, which historically has been considered paid time. It is undisputed that supervisors are on call during this break. Several plaintiffs testified they are often called away while eating to respond to center matters. They also stated they generally may not leave the facility and often catch up on paperwork during this period. In addition, plaintiffs are required to report to work thirty minutes before their scheduled shift begins. This is not considered paid time. The parties testified, however, that it is necessary to the efficient operation of the prison and allows a smooth transition between shifts.
 
 
 4
 Historically, supervisors at the detention center were paid overtime in the same manner as the corrections officers working under them. At some time following application of the FLSA to public employees, however, the City altered its overtime policy slightly and established a system whereby supervisors were eligible for "premium pay." This policy was, in most respects, the same as the previous overtime scheme. City representatives testified at trial that they thought premium pay was necessary to attract and keep qualified officers.
 
 
 5
 In 1988, several detention center employees went to the Albuquerque city council to express their concern over the working conditions and employment practices at the prison. In response, the City formed a task force to evaluate the various employee positions at the center. The task force determined that the positions of lieutenant and captain, then referred to as corrections supervisor and corrections facility supervisor, needed to be upgraded to reflect the additional responsibilities involved in those positions. The recommendations of the task force were accepted and the positions were upgraded so that more pay was available. Following this change, the lieutenants and captains continued to receive premium pay.
 
 
 6
 In 1990, an internal payroll audit was conducted, in large part due to citywide budget shortfalls. As a result of that audit, the City decided to end the practice of giving premium pay to lieutenants and captains. The City considered those positions management and concluded overtime was not required under the FLSA. Thus, starting in August of 1990 the lieutenants and captains no longer received any form of overtime compensation. They filed this lawsuit to recoup the resulting lost wages.
 
 II. Discussion
 A. Background
 
 7
 At the time the FLSA was enacted in 1938, it did not apply to state and local government employees. See Lamon v. City of Shawnee, 972 F.2d 1145, 1149-50 (10th Cir.1992) (discussing history of the FLSA and its application to public sector employees), cert. denied, 113 S.Ct. 1414 (1993); see also 57 Fed.Reg. 37,666-68 (1992)(same). It was not until 1986 that FLSA coverage was extended to the public sector. See generally Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 533-34, 557 (1985)(overruling National League of Cities v. Usery, which rejected application of FLSA to public sector). Only then did Congress, the courts, and the Department of Labor (DOL) begin the process of integrating public sector employment issues into the well established regulatory scheme of the FLSA. In this case, we are called upon to undertake that task again.
 
 
 8
 The magistrate judge held plaintiffs are not exempt under the "bona fide executive" exception to the FLSA. As a result, he concluded they are entitled to overtime compensation under the Act. In calculating the appropriate damages, he found plaintiffs must be paid for their meal break because they are, in effect, on duty during that time. As a consequence of that finding, he determined the half-hour briefing period required at the beginning of each shift is essentially uncompensated overtime. The magistrate used the briefing time as a basis for awarding damages. He rejected the City's argument that the appropriate method for calculating any overtime is on a twenty-eight day cycle, rather than a weekly one. The City challenges each of these findings. We address them in turn.
 
 
 9
 Our standard of review is well settled. "We review the district court's factual findings under the clearly erroneous standard, and its ultimate conclusion that the captains [and lieutenants] were not exempt employees de novo." Department of Labor v. City of Sapulpa, 30 F.3d 1285, 1287 (10th Cir.1994). As a substantive matter, the City has the burden of proving the exemption applies. Id. The plaintiffs must fit "plainly and unmistakenly" within the exemption's terms. Reich v. Wyoming, 993 F.2d 739, 741 (10th Cir.1993)(citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).
 
 B. The Bona Fide Executive Exemption
 
 10
 When the FLSA was enacted, Congress included a provision requiring employers to pay overtime wages in an amount of one and one-half times the regular hourly rate of pay for employees working over forty hours a week. 29 U.S.C. 207(a)(1). Exempt from this provision, however, were workers performing in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. 213(a)(1).
 
 
 11
 Regulations accompanying the Act define this management exemption in some detail. See 29 C.F.R. 541.1(a)-(f). The bona fide executive is an employee
 
 
 12
 who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees....
 
 
 13
 29 C.F.R. 541.1(f). Here, there is no dispute that the plaintiffs earn over $250.00 per week. Therefore, we focus our examination on whether the plaintiffs are paid on a salary basis and whether their primary duties involve management. See Hilbert v. District of Columbia, 23 F.3d 429, 431 (D.C.Cir.1994). The district court determined they met neither test.
 
 1. The Salary Test
 
 14
 The regulations accompanying the FLSA define the scope of the salary basis test. Section 541.118(a) states
 
 
 15
 [a]n employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
 
 
 16
 29 C.F.R. 541.118(a).
 
 
 17
 Relying on this definition of the salaried employee, some courts have held that any policy which requires reductions in pay for absences less than a day[5] is repugnant to the concept of salary basis. Thus, if the public entity allows partial day docking, the employee is not, by definition, salaried. As a consequence, the exemption cannot apply. See, e.g., Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C.Cir.1993); Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections, 992 F.2d 82, 86 (6th Cir.1993); Abshire v. County of Kern, 908 F.2d 483, 486-87 (9th Cir.1990), cert. denied, 498 U.S. 1068 (1991).
 
 
 18
 Here, the district court found plaintiffs were not paid on a salary basis because "[t]he compensation [they receive] is directly or indirectly subject to deduction for less than one day's absence from work." Appellant's App. Vol. I doc. 14 at 2. While it is true that certain employees testified they had to use accrued benefits, such as vacation or sick time, to cover absences less than a day, there was no evidence of a policy to decrease the actual amount of pay received based on those absences. In fact, the testimony was that the City did not dock pay. See Appellant's App. Vol. III doc. 19 at 76-77, 149-50.
 
 
 19
 Section 541.118(a) is very specific. It speaks of deductions in the amount of compensation as being contrary to the salary test. It does not exclude from salaried status those employees who must use accrued benefits to cover partial day absences from work. Absent a specific policy to reduce the amount of pay, as opposed to reductions in accrued benefits, there is no violence done to the salary basis concept. Barner v. City of Novato, 17 F.3d 1256, 1261-62 (9th Cir.1994). We agree with the court in Barner that a policy requiring public employees to reduce leave for partial day absences does not offend the salary basis test. The district court erred when it found otherwise. The City points out--and Plaintiffs do not contest--that captains and lieutenants were paid a regular biweekly amount in excess of $250 per week. Because this regular amount was not subject to reductions in pay, we hold that Plaintiffs were salaried.[6]
 
 
 20
 This does not, however, end our inquiry regarding application of the executive exemption. The district court also held plaintiffs do not qualify as management employees under the duties test. In light of our conclusion that the district court erred when it held plaintiffs failed the salary test as a matter of law, we also consider the City's claims with regard to the second prong of the exemption.
 
 2. The Duties Test
 
 21
 The second component of the executive exemption is the duties test. Under the DOL's regulations, this aspect of the exemption is satisfied if the primary duty of the employee is management. Indicia of management are, among other things, directing the work of others, appraising productivity, recommending promotions, handling complaints and grievances, and providing for the safety of employees. 29 C.F.R. 541.102(b); City of Sapulpa, 30 F.3d at 1287 (listing management duties). Throughout this litigation, the parties' dispute has focused on the plaintiffs' duties and how they spend their time during work hours.
 
 
 22
 The plaintiff-lieutenants testified they spend approximately forty to sixty-five percent of their time performing nonmanagement functions. During that time, they are doing the same work as the corrections officers, who are covered FLSA employees. The captains testified that although they spend only fifteen to twenty percent of their time performing the duties of a corrections officer, they also spend fifty percent of their time doing data entry, which they submit is purely clerical.
 
 
 23
 The determination whether an employee's duties are primarily management oriented is fact driven. City of Sapulpa, 30 F.3d at 1287. Where the evidence shows the employee spends over fifty percent of his or her time performing activities which are considered management, however, that will be considered the employee's primary duty. 29 C.F.R. 541.103. Alternatively, if the facts indicate an employee does not spend fifty percent of his or her time performing management functions, the employee may still fall within the exemption if he or she meets other criteria. Id. The additional criteria are
 
 
 24
 the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.
 
 
 25
 29 C.F.R. 541.103. The record reveals there was evidence submitted on each of these factors during trial.
 
 
 26
 Despite the parties' focus on the nature of plaintiffs' duties, the district court's findings of fact and conclusions of law do not reflect a considered analysis of these four supplemental factors. Indeed, it appears the court relied only on the discretionary authority factor when evaluating plaintiffs' primary duties. This was legal error. Therefore, we must remand with directions that the court make specific findings and legal conclusions using the appropriate standard.
 
 
 27
 Because we are remanding this matter to the district court for proper application of the law and regulations governing the bona fide executive exemption, we turn to the challenges the City has made to the court's damage calculations. If the court determines on remand that the exemption does not apply, these issues will still be relevant. The corollary issues are 1) whether the court erred in finding Plaintiffs' mealtimes compensable, and 2) whether the district court erred in failing to apply the twenty-eight day "tour of duty" rule for measuring overtime damages.
 
 C. Compensability of Meal Time
 
 28
 The district court ruled plaintiffs should be compensated during their half-hour meal break. Specifically, the magistrate judge held the captains and lieutenants are "under such restrictions as to their movement and availability that the one-half hour lunch period should be considered as compensable time." Appellant's App. Vol. I doc. 14 at 3. Thus, Plaintiffs worked one-half hour during the pre-shift briefing period,[7] one-half hour during the lunch period, and seven and one-half hours during their regular shift, for a total of eight and one-half compensable hours per day. The magistrate judge used this eight and one-half hour figure to calculate damages.
 
 
 29
 "[A] police officer must primarily be engaged in work-related duties during meal periods to warrant compensation therefor." Lamon, 972 F.2d at 1157; see also 29 C.F.R. 785.19; 553.223(b).[8] Here, the evidence shows plaintiffs are on call during their lunch and may not leave the facility except under very limited circumstances. Plaintiffs testified their meal period is disrupted on a regular basis because they are needed elsewhere in the prison. These are factual findings which are not clearly erroneous. Consequently, we affirm the district court's decision on this issue.
 
 D. Tour of Duty Exception
 
 30
 Although private sector employers must generally compensate employees for time spent over forty hours in a week, government entities employing law enforcement personnel are not so restricted.[9] The tour of duty, or "7(k)," exception allows employers to alter overtime standards for law enforcement personnel who work on alternative cycles of between seven and twenty-eight days. See Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir.1992). Under 29 U.S.C. 207(k)
 
 
 31
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in ... law enforcement activities ... if--
 
 
 32
 ...
 
 
 33
 * * *
 
 
 34
 (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 35
 The DOL regulations specify that law enforcement personnel may not work more than 171 hours in a twenty-eight day period without receiving overtime. 29 C.F.R. 553.201(a). Thus, anything over that amount is subject to a rate of one and one-half times the usual hourly pay.
 
 
 36
 It is undisputed that the City, through an interoffice memorandum from the Director of Corrections, adopted a twenty-eight day tour of duty standard on October 12, 1985. Appellant's App. Vol. III doc. 23. In addition, trial evidence reveals plaintiffs work on a seven-day calendar. See Appellees' App. at 1-134. The magistrate judge ruled, however, that the City's failure to implement a twenty-eight day wage and overtime schedule was fatal to its attempt to exercise any rights it had under 207(k). Inherent in this conclusion, however, is an assumption that the section requires employers to conform pay periods to match a twenty-eight day cycle. We must disagree with that conclusion.
 
 
 37
 A public employer need not structure its pay periods on a twenty-eight day basis to take advantage of the 7(k) exception. Lamon, 972 F.2d at 1151; see also 29 C.F.R. 553.224(a). Indeed, "[o]ther than adopting a specified work period, the employer is not required to restructure its overtime payment practices whatsoever; the employer has the option to do so." Lamon, 972 F.2d at 1152 (emphasis added). This court has rejected the argument that a public employer must make wholesale changes in its wage and hour practices to take advantage of the section. Id. ("That the measure affected little change does not render it a fiction."). The magistrate judge erred when he held otherwise.
 
 
 38
 Plaintiffs argue Lamon is distinguishable from this case because execution of an interoffice memorandum is insufficient to exercise 7(k) rights. In Lamon, the policy was made part of an administrative code. There is no language in Lamon, however, suggesting that incorporation in a city code is essential to effectuating the exception. To the contrary, it is enough that the tour of duty exception be adopted as city policy. See McGrath v. City of Philadelphia, 864 F.Supp. 466, 476 (E.D.Pa.1994) ("The 'establishment' of a 7(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days.").
 
 
 39
 Here, both the district court's findings and the record are unclear as to whether the memo constituted city policy.[10] Plaintiffs have not argued, however, that the document is a sham, and it is undisputed that the memo came from, and was distributed to, the appropriate corrections facility personnel.[11] See Lamon, 972 F.2d at 1152 (noting that employer may not impose "sham changes" in scheduling and employment policies to evade the Act). Therefore, if the City can show this memorandum was made part of its wage and hour employment policy, it will be sufficient to invoke 7(k) rights.
 
 
 40
 Because both the record and the magistrate judge's order are unclear on whether this memorandum constituted city policy, however, we must remand for further factual findings on this question. If the memo did result in a policy change, the City is entitled to judgment as a matter of law on this issue.
 
 
 41
 In light of our disposition on these challenges to the district court's order, we need not address the City's remaining argument that there was insufficient evidence of damages. If plaintiffs prevail on remand, the magistrate judge should recalculate any damages using the standards we have announced here. In particular, if necessary, the magistrate judge should alter any award to reflect that certain plaintiffs ceased working for the City before or during this litigation. See Appellees' Br. at 23 (admission that magistrate judge erred in awarding full damages to plaintiffs no longer working for the City).
 
 
 42
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 Although certain plaintiffs are no longer working at the detention center, the majority have retained their positions. Consequently, we will refer to the positions in the present tense
 
 
 [4]
 The parties agreed to proceed before a magistrate judge pursuant to 28 U.S.C. 636(c)(1)
 
 
 [5]
 We find no allegations of docking for absences of greater than one day, in which case a distinction is drawn between different types of absences. See generally 29 C.F.R. 541.118(a)
 
 
 [6]
 In light of this disposition--that the employees in question are not disqualified from exempt status solely based upon the City's practice of docking accrued benefits--we need not reach the other argument advanced by the City, that docking cannot preclude salaried status for public employees because of the principles of public accountability. In particular, we need not consider the DOL's rejection of this portion of the salary test for public employees beginning in August of 1992, or whether the test was valid prior to that time. See Service Employees Int'l Union Local 102 v. County of San Diego, 35 F.3d 483, 489 (9th Cir.1994); see also 29 C.F.R. 541.5d(a) (directing that public employees who otherwise meet the salary test should not be disqualified from exempt status simply because they are paid under a system which takes into account principles of public accountability)
 
 
 [7]
 This is undisputed by the City
 
 
 [8]
 The Lamon court discussed this issue using the standards set forth in the regulations governing the twenty-eight day tour of duty exception. See 972 F.2d at 1155-58. As we note in part D, infra, it is unclear at this juncture whether that exception applies here. There is nothing in the record or the briefs, however, suggesting the regulations governing the forty hour work week would direct a different result under the facts presented here. See id. at 1158 n. 18
 
 
 [9]
 There appears to be no dispute that plaintiffs are law enforcement personnel. See Avery v. City of Talladega, 24 F.3d 1337, 1342-43 (11th Cir.1994) (jailers at corrections center are law enforcement personnel under the FLSA)
 
 
 [10]
 The district court found that the memo "was never implemented in such a way as to cause hours for employees of Bernalillo County Detention Center to be computed on a 28 day 'tour of duty' basis." Aplt.App. at 97, p 13. This language could be interpreted as a finding that 1) the legislature never adopted the memo, 2) the memo did not propose a 28 day schedule for actual payments, or 3) the city never effectively made the memo part of its wage and hour employment policy. Only the third alternative would preclude the City's invocation of the tour of duty exception
 
 
 [11]
 Plaintiffs suggest in their brief that the magistrate judge's order means other than what it says. They state that "the Magistrate Judge could have concluded that the [tour of duty] memo represented a policy which had been superseded long before Workers' claims arose." Appellees' Br. at 21. This is pure speculation, and we will not presume to know the magistrate's thinking on this issue. See G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824, 831 (10th Cir.1990)(appellate court should not second guess at the meaning of the district court's order)